**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| THE CITY OF SPRINGFIELD, OHIO, MAYOR ROB RUE, ASSISTANT MAYOR DR. DAVID ESTROP, CITY COMMISSIONERS KRYSTAL BROWN and TRACEY TACKETT, and TAYLOR FLORA, CASEY ROLLINS, JESSICA SHAFER, and RANDALL COMER, <br><br> Plaintiffs, <br><br><br> v. <br><br> The BLOOD TRIBE, CHRISTOPHER POHLHAUS, DRAKE BERENTZ, and JOHN DOES 1–7, <br><br> Defendants. | **Civil Action No.** 3:25-cv-33 <br><br> District Judge Walter H. Rice <br><br> Magistrate Judge Caroline H. Gentry |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR
ALTERNATE SERVICE AND TO EXTEND THE TIME TO EFFECT SERVICE**

James Pasch (0086809)
ANTI-DEFAMATION LEAGUE
605 Third Avenue
New York, NY 10158-3650
Tel: 212-885-7700
Email: jpasch@adl.org

Glen R. McMurry (0082600)
TAFT STETTINIUS & HOLLISTER, LLP
40 North Main Street, Suite 1700
Dayton, OH 45423-1029
Tel: 937-228-2838
Fax: 937-228-2816
Email: gmcmurry@taftlaw.com

Daniel J. Kramer (*pro hac vice*)
Gregory F. Laufer (*pro hac vice*)
Marques S. Tracy (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Tel: 212-373-3000
Fax: 212-757-3990
Email: dkramer@paulweiss.com
glaufer@paulweiss.com
mtracy@paulweiss.com

Karen L. Dunn (*pro hac vice*)
2001 K Street, N.W.
Washington, DC 20006-1047
Tel: 202-223-7300
Fax: 202-223-7420
Email:  kdunn@paulweiss.com

***Counsel for Plaintiffs***

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................ 1

BACKGROUND ............................................................................................... 2

    A.    PLAINTIFFS ATTEMPT TO PERSONALLY SERVE POHLHAUS
        AND BERENTZ ..................................................................................... 2

    B.    PLAINTIFFS RETAIN INVESTIGATIVE FIRMS TO LOCATE
        DEFENDANTS ..................................................................................... 3

    C.    DEFENDANTS ARE AWARE OF THIS ACTION ............................................. 5

ARGUMENT ................................................................................................... 9

I.      LEGAL STANDARD ................................................................................. 9

II.     ALTERNATE SERVICE IS APPROPRIATE ............................................... 10

    A.    ALTERNATE SERVICE IS CONSTITUTIONAL BECAUSE THE
        DEFENDANTS HAVE ACTUAL NOTICE OF THIS ACTION ...................... 11

    B.    SERVICE BY PUBLICATION IS ALSO WARRANTED UNDER OHIO
        LAW ................................................................................................. 13

         1.    Berentz's and Pohlhaus's Residences are Unknown to Plaintiffs
             After Exercising Reasonable Diligence .................................... 13

         2.    Service by Publication Is Authorized by Ohio Law With Respect to
             Berentz. .............................................................................. 14

         3.    Plaintiffs Should Also Be Permitted to Serve Pohlhaus by
             Publication or Any Other Alternate Method ............................. 16

         4.    The Blood Tribe Can Be Served Through Publication via Berentz
             or Pohlhaus .......................................................................... 18

         5.    The John Doe Defendants Can Be Served by Publication ........... 19

III.    THE TIME TO EFFECTUATE SERVICE SHOULD BE EXTENDED .................. 19

CONCLUSION ................................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*United States* v. *Campbell*,
   3 F. App'x 381 (6th Cir. 2001) ...................................................................................9, 11

*Habib* v. *Gen. Motors Corp.*,
   15 F.3d 72 (6th Cir. 1994) ...................................................................................10, 20

*Henderson* v. *United States*,
   517 U.S. 654 (1996)..................................................................................9, 10, 11, 12

*Hunter* v. *Rhino Shield*,
   2019 WL 12240912 (S.D. Ohio Feb. 26, 2019)................................................14, 15

*King* v. *Taylor*,
   694 F.3d 650 (6th Cir. 2012) ........................................................................9, 10, 11

*Kohler Co.* v. *Domainjet, Inc.*,
   2012 WL 716883 (S.D. Cal. Mar. 5, 2012) ............................................................17

*Marvici* v. *Roche Facilities Maint. LLC*,
   2021 WL 5323748 (S.D.N.Y. Oct. 6, 2021) .....................................................11, 17

*Mullane* v. *Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950).............................................................................................11, 12

*Murrell* v. *Patriot Front*,
   2023 WL 7332881 (D. Mass. Nov. 7, 2023) ..........................................................17

*Obeidallah* v. *Anglin*,
   2018 WL 1773118 (S.D. Ohio Apr. 13, 2018) ..................................................14, 20

*Osborne* v. *First Union Nat. Bank of Delaware*,
   217 F.R.D. 405 (S.D. Ohio 2003) (Rice, J.) ....................................................10, 19

*Powell* v. *Divine Status LLC*,
    2023 WL 3734237 (S.D. Ohio May 31, 2023) ............................................. *passim*

*Rice* v. *Kyte*,
   2012-Ohio-841 (Ohio Ct. App. 2d 2012)................................................................14

*In re Thompkins*,
   875 N.E.2d 582 (Ohio 2007)..............................................................................13, 14

*Wise* v. *Dep't of Def.*,
  196 F.R.D. 52 (S.D. Ohio 1999) ...................................................................................10, 20

*Wise* v. *T-Mann*,
  2014 WL 4302536 (N.D. Ohio Aug. 29, 2014) .........................................................16

**Statutes**

Ohio Rev. Code § 1745.05(M) ...........................................................................................18

Ohio Rev. Code § 2703.14(L)............................................................................... *passim*

Ohio Rev. Code § 2703.24...................................................................................10, 19

**Other Authorities**

Fed. R. Civ. P. 4 ..................................................................................................... *passim*

Fed. R. Civ. P. 17(b)(3)...........................................................................................17

Ohio R. Civ. P. 4.2(I)...............................................................................................10, 18

Ohio R. Civ. P. 4.4 .................................................................................................. *passim*

S.D. Ohio L.R. 4.2 ...................................................................................................10

## INTRODUCTION

Plaintiffs Rob Rue, David Estrop, Krystal Brown, Tracey Tackett, Taylor Flora, Casey Rollins, Jessica Shafer, Randall Comer, and the City of Springfield, Ohio (together, "Plaintiffs") brought this action to hold Defendants accountable for their months-long unlawful campaign of harassment and intimidation against those who supported Springfield's Haitian community in the face of Defendants' racist attacks. For the past three months, however, Defendants Drake Berentz and Christopher Pohlhaus have intentionally evaded personal service of process, concealing their whereabouts and leaving their primary residences for an extended period of time. Plaintiffs have—at significant expense—gone to great lengths to locate and serve Defendants, retaining numerous process servers and two investigative firms. More specifically, Plaintiffs have directed dozens of service attempts and multiple rounds of surveillance in six different states. Defendants, however, have persistently evaded detection in an effort to stall this lawsuit and block Plaintiffs' pursuit of remedies.

There is no question that Defendants have actual notice of this action. Their protracted and intentional evasion of service is itself powerful evidence of their notice. As are their numerous public statements about the lawsuit, including on multiple online streams and dozens of social media posts. Indeed, Defendants have gone so far as to create a publicly accessible webpage, linked directly to this Court's docket in this case, designed to raise funds for their anticipated legal fees in this very matter.

With the 90-day deadline for effectuating personal service rapidly approaching, Plaintiffs are now compelled to ask this Court to authorize them to serve Defendants by alternate means. For the reasons set forth below, Plaintiffs respectfully request that they be permitted to serve all Defendants by publication pursuant to Federal Rule of Civil Procedure 4(e)(1) and applicable Ohio law. In the alternative, Plaintiffs request that the Court permit such alternate

service as it deems just and proper in light of the fact that the Defendants have actual notice of the action and are intentionally evading service. In order to effectuate service, by publication or otherwise, Plaintiffs also respectfully request an extension of time to complete service.

## **BACKGROUND**

On February 6, 2025, Plaintiffs initiated this action to remediate their injuries resulting from a campaign of harassment waged by Defendants Pohlhaus, Berentz, the Blood Tribe, and John Does 1–7. As described in the Complaint, in July 2024, members of the Blood Tribe, at Pohlhaus's direction, coordinated a "hit" on Springfield to purportedly thwart an "invasion" of Haitian immigrants that had been welcomed into the City. Dkt. 1 ("Compl.") ¶¶ 1, 55, 74. What followed was a months-long harassment campaign of the City, its elected officials, and its residents for offering support for their Haitian neighbors. Defendants organized and held a threatening armed march on August 10, 2024, *id.* ¶¶ 58–61, harassed and threatened City Commissioners during a meeting on August 27, 2024, *id.* at ¶¶ 66–71, and incited the sending of dozens of bomb threats to multiple schools, hospitals, and City buildings between September 12, 2024 and September 24, 2025, *id.* at ¶¶ 75–86. Defendants also harassed and threatened the individual Plaintiffs, by, among other things, sending death threats and harassing messages; "doxing" several of the Plaintiffs by revealing their home and work addresses and instructing their followers to harass Plaintiffs; sending suspicious threatening packages to at least one Plaintiff's home; and creating fake online dating profiles, which encouraged strangers to visit Plaintiffs' homes late at night. *See id.* at ¶¶ 87–131.

### A. **Plaintiffs Attempt to Personally Serve Pohlhaus and Berentz**

Promptly following the filing of the Complaint, Plaintiffs took several steps to effectuate service. Using various online research tools, Plaintiffs identified what appeared to be a recent address for Pohlhaus in Bozeman, Montana, and a recent address for Berentz in Senecaville,

Ohio, where his vehicle is registered.  *See* Declaration of Marques Tracy ("Tracy Decl.") at ¶ 4. On February 17, 2025, Plaintiffs filed requests for the issuance of summonses for Defendant Pohlhaus using the Bozeman address, for Berentz using the Senecaville address, and for the Blood Tribe through both Pohlhaus and Berentz.  *See* Dkt. 7–9.  The Court issued the summonses the next day, Dkt. 10, and Plaintiffs immediately sought to personally serve Defendants.

Plaintiffs first retained process servers through Veritext Legal Solutions ("Veritext") to attempt service on Pohlhaus and Berentz.  Tracy Decl. ¶ 8.  Between February 19 and March 7, process servers made at least eight attempts to serve Pohlhaus and the Blood Tribe at the Bozeman address, with no success.  *Id*.  Plaintiffs had separately identified a Peoria, Arizona address for Pohlhaus, and attempted service at that address on February 25.  *Id*. ¶¶ 4, 12.  The resident at that address said she had lived there for two years and, though she had received mail for Pohlhaus, did not know who or where he was.  *Id*. ¶ 13.  The process server also tried to speak to neighbors with no success.  *Id*.

At the same time, Plaintiffs also sent process servers to the Senecaville address in an attempt to personally serve Berentz.  *Id*. ¶ 9.  Between February 20 and 22, process servers made at least three attempts to serve Berentz at the Senecaville address, with no success.  *Id*. Plaintiffs also identified a potential address for Berentz in Friedens, Pennsylvania, and sent process servers to attempt service at that location.  *Id*. ¶¶ 4, 10.  On February 25, process servers attempted service at the Friedens address.  *Id*. ¶ 10.  A woman residing at that address said she did not know Berentz and explained that she rented the property from a neighbor.  *Id*. ¶ 11.  The process server attempted to speak to the neighbor, but was unable to speak to them, as they were away.  *Id*.

**B.    Plaintiffs Retain Investigative Firms to Locate Defendants**

On February 25, Plaintiffs retained Concentric Advisors ("Concentric") to conduct an investigation into Pohlhaus's and Berentz's whereabouts.  *Id*. ¶ 14.  For Pohlhaus, Concentric

identified another potential address in Lee, Maine.  *Id.* ¶ 16.  A process server with Court Support, Inc. attempted service at that address on March 11, and was told that Mr. Pohlhaus left that address in 2023 and moved out west.  *Id.* ¶ 21.  Plaintiffs identified yet another potential address for Pohlhaus in Brewer, Maine.  *Id.* ¶ 16.  A process server attempted service at that address on March 14, and the resident at that address stated that he did not know Pohlhaus and that the property was being used as a vacation rental.  *Id.* ¶ 22.

Concentric also identified three additional addresses for Berentz, all in Washington County, Ohio.  *Id.* ¶ 17.  Veritext sent process servers to each of the three addresses on March 6, 8, and 9.  *Id.* ¶ 18.  Process servers were unable to make contact with any residents at those addresses.  *Id.*

On March 6, Plaintiffs hired yet another investigative firm, Vantage Intelligence ("Vantage"), to conduct further investigations into Pohlhaus's and Berentz's whereabouts.  *Id.* ¶ 24.  Vantage identified yet another potential address in Richland, Mississippi, which is associated with Pohlhaus's parents.  *Id.* ¶ 28.  Given various statements Pohlhaus made on streams that he was considering running for office in Mississippi, *see id.* ¶ 29, this seemed like a potentially promising option.  Vantage investigators extensively monitored that address for a period of three days on March 25, March 29, and April 3, 2025.  *Id.* ¶¶ 30–32.  Investigators made contact with Pohlhaus's mother on one occasion, but she stated that Pohlhaus was not there and only visited occasionally.  *Id.* ¶ 31.  Accordingly, investigators did not attempt service at that time.  *Id.* ¶ 34.

Vantage also identified yet another potential address for Berentz in Washington County, Ohio.  *Id.* ¶ 35.  This residence appears to be affiliated with Berentz's grandmother or other female relative.  *Id.* ¶ 36.  On April 17, Vantage investigators visited this property, but Berentz was not observed arriving at or leaving the property.  *Id.* ¶ 37.

Vantage has also purchased Blood Tribe merchandise to trace the shipping address, and collected information on business entities and phone numbers associated with Berentz, Pohlhaus, and/or the Blood Tribe.  *See id.* ¶ 26.  None of these efforts have been successful.  *Id.* ¶ 39.

**C.**     **Defendants Are Aware of this Action**

Plaintiffs' efforts to personally serve Pohlhaus and Berentz have been unsuccessful to date because they have, by their own admission, intentionally avoided service.  In an online stream on March 3, Pohlhaus stated that he and other Blood Tribe members are aware that service by publication is an option, but are nonetheless intentionally avoiding service in the hope that this Court refuses to permit service by publication.  As Defendant Pohlhaus stated:

> Basically, they gotta serve us, they're probably gonna do it publicly. ***There's a process to doing that, which is tricky I guess, the lawyer said—they may not even get approval to do that.***  There's actually a ***chance that if they don't serve us by their deadline of May first, that they're fucked***, but I doubt that, I bet you they can put some sort of extension or some other kike-y bullshit on it and stretch it out somehow and keep looking for us.  Basically the way the public serving works is they just post an article on some newspaper and say you've been officially served.[1]

On April 16, Pohlhaus doubled down on this statement, saying "they still have to serve me, by the way, guys, by May 1st, and they still haven't been able to find me."[2]

Defendants have made numerous other statements illustrating that they are following this case closely.  Pohlhaus regularly refers to the lawsuit in his online streams.  On March 6, for example, Pohlhaus stated:  "We got this lawsuit I'm trying to fundraise for, yeah, so this is one way to do it . . . [Plaintiffs] received a lot of harassment, and all kinds of stuff . . . all of

---

[1] See Christopher Pohlhaus (HAMMER), BLUTCAST W/ CRUSTY, odysee.com (March 3, 2025), https://odysee.com/@Hammer:3e/CRUSTY:0 at 1:25:04.
[2] Christopher Pohlhaus (HAMMER), BLUTCAST BILBO'S SEPARATION OR MONGRELIZATION PART 5, odysee.com (Apr. 16, 2025), https://odysee.com/@Hammer:3e/BILBO5:8 at 1:27:20.

those pieces of harassment, the ADL has attached, they have basically blamed us for specifically and they got a bunch of townspeople in the town to sign basically as plaintiffs against us. So we have to defend on every bomb threat they received, every freakin' crazy package they got in the mail, all that shit. And it's not going to be cheap."[3]

       Defendants have established a fundraising page on the website GiveSendGo, which Pohlhaus actively promotes on his streams and to which he links in his video descriptions.[4] The GiveSendGo page describes Plaintiffs' complaint and links directly to Court Listener's compilation of the docket for this case.[5] The page further describes itself as a "[c]ampaign created by Christopher Pohlhaus" and requests financial contributions, explaining that the Blood Tribe "do[es] not have the unlimited pockets of the ADL to defend ourselves."[6] It further notes that "funds will be received by Christopher Pohlhaus."[7] To date, the GiveSendGo page has raised over $7,000 towards its $100,000 goal.[8] A screenshot of the GiveSendGo page is shown below:

---

[3] *See* Christopher Pohlhaus (HAMMER), BLUTCAST W/ SAM FROM FULLHAUS, odysee.com (March 6, 2025), https://odysee.com/@Hammer:3e/SAM:bd at 32:20–34:04.
[4] *See* Christopher Pohlhaus (HAMMER), *BLUTCAST W/ CRUSTY*, odysee.com (March 3, 2025), https://odysee.com/@Hammer:3e/CRUSTY:0.
[5] *See Help BT fight for free speech against the ADL*, GiveSendGo.com (accessed April 16, 2025), https://www.givesendgo.com/Btvsadl.
[6] *Id.*
[7] *Id.*
[8] *Id.*



Pohlhaus regularly engages with followers to increase fundraising for legal fees. On March 15, for example, pseudonymous associates of Pohlhaus "Slick Dog" and "Jack Smith" stated on Pohlhaus's stream that "we did get some good donations, three of them in fact, on GiveSendGo in our fight against the ADL" and "thank you for all the donations, helping us fight this lawfare man, you know it's what these kikes do, so we need all the help we can get." Pohlhaus responded that "I think with the super chats . . . we're now close to $5,500, so thank you guys for that. It's still not enough for us to fight, so we're going to have to keep pushing."[9]

Similarly, on March 17, "Slick Dog" stated, "We got a couple nice donations overnight on the GiveSendGo against the ADL lawsuit," and read off the screen names of donors,

---

[9] Christopher Pohlhaus (HAMMER), *BLUTCAST GLR'S THIS TIME THE WORLD PART 1*, odysee.com (March 15, 2025), https://odysee.com/@Hammer:3e/tttw:5 at 5:48–6:54.

with Pohlhaus giving a Nazi salute in response to each name.[10]  On March 24, "Slick Dog" again discussed donations, stating, "We did get a nice donation on GiveSendGo in our fight against the ADL from 'Blood of my Blood,' 'never bend the knee, boys,'" to which Pohlhaus responded with a Nazi salute and stated, "Heil, brother. Thank you so much."[11]

Pohlhaus has also repeatedly referenced the lawsuit on his various X (formerly Twitter) accounts.  In one now-deleted post, Pohlhaus railed against this lawsuit, referred to Haitian immigrants as the "disgusting brown pets" of counsel, and stated "we are being sued for every single known act of harassment [Plaintiffs] received," and posted the GiveSendGo link.[12] The now-deleted post is preserved in the screenshot below:



---

[10] Christopher Pohlhaus (HAMMER), *BLUTCAST JEFFERSON DAVIS' THE RISE AND FALL OF THE CONFEDERATE GOVERNMENT PART 1*, odysee.com (March 17, 2025), https://odysee.com/@Hammer:3e/RISENFALL1:a at 5:48–6:06.

[11] Christopher Pohlhaus (HAMMER), *BLUTCAST JEFFERSON DAVIS' THE RISE AND FALL OF THE CONFEDERATE GOVERNMENT PART 2*, odysee.com (March 24, 2025), https://odysee.com/@Hammer:3e/RISENFALL2:b at 5:58–6:16.

[12] @yee_ole_hammer, Twitter (April 18, 2025 1:52 PM), https://x.com/yeee_ole_hammer/status/1913289530884735347.

While both Concentric and Vantage have taken significant efforts to identify the John Doe defendants, and have some promising leads, Plaintiffs do not yet have sufficient information to definitively identify the John Doe defendants, who were masked during their unlawful acts or perpetrated them via anonymous means. Tracy Decl. ¶¶ 41–45. Discovery from Berentz, Pohlhaus, and/or third parties may be necessary to identify the John Doe defendants.

## ARGUMENT

### I.     LEGAL STANDARD

Service of process must comply with constitutional due process, which requires that a method of service be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *United States* v. *Campbell*, 3 F. App'x 381, 383 (6th Cir. 2001) (citing *Mullane* v. *Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). The fundamental purpose of service of process is to supply actual notice of the pendency of a legal action. *See Henderson* v. *United States*, 517 U.S. 654, 672 (1996); *King* v. *Taylor*, 694 F.3d 650, 659 (6th Cir. 2012) (finding defendant's conduct sufficient to waive defendant's claim of insufficient service). While formal, in-person service of process ensures that it is highly likely that defendants have actual notice, alternate means of service are constitutionally permissible so long as they meet the standard set out in *Mullane*. *See Campbell*, 3 F. App'x at 383.

Service of process must also comply with the Federal Rules of Civil Procedure and applicable state law. The Federal Rules permit service "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed R. Civ. P. 4(e)(1). Ohio law permits service by publication "where the defendant, being a resident of this state, has departed from the county of his residence with intent to . . . avoid the service of a summons, or keeps himself concealed with a similar intent."

Ohio Rev. Code § 2703.14(L); *see also* Ohio R. Civ. P. 4.4(A)(1) (authorizing service by publication upon affidavit that "aver[s] that service of summons cannot be made because the residence of the party to be served is unknown to the affiant, all of the efforts made on behalf of the party to ascertain the residence of the party to be served, and that the residence of the party to be served cannot be ascertained with reasonable diligence."). Service by publication is likewise permissible where "the name and residence of a necessary party are unknown to the plaintiff." Ohio Rev. Code § 2703.24.[13]

Extension of a deadline for service of process is appropriate where a plaintiff demonstrates good cause for their inability to serve the defendant within 90 days. *Osborne* v. *First Union Nat. Bank of Delaware*, 217 F.R.D. 405, 406 (S.D. Ohio 2003) (Rice, J.). Good cause exists where a plaintiff has been unable to serve a defendant after a good faith effort, and where a defendant intentionally evades service of process. *Habib* v. *Gen. Motors Corp.*, 15 F.3d 72, 74 (6th Cir. 1994), 15 F.3d at 74; *Wise* v. *Dep't of Def.,* 196 F.R.D. 52, 54 (S.D. Ohio 1999).

## II.    ALTERNATE SERVICE IS APPROPRIATE

Here, alternate service is constitutionally appropriate because the Defendants have actual notice of this action. *See supra* at 5–8; *see also Henderson*, 517 U.S. at 672; *King*, 694 F.3d at 659. Alternate service is also consistent with Federal Rule of Civil Procedure 4(e), Ohio Rule of Civil Procedure 4.4, and Ohio law, because Plaintiffs have been unable to locate Berentz and Pohlhaus after a reasonably diligent search, and because the evidence shows the Defendants are concealing themselves to evade service of process. *See supra* at 2–8; *see also Powell* v. *Divine Status LLC*, 2023 WL 3734237, at *2 (S.D. Ohio May 31, 2023); Ohio Rev. Code § 2703.14(L). Ohio law further permits the Blood Tribe itself to be served via Berentz or Pohlhaus through the

---

[13] This jurisdiction's Local Rules do not place any further limits on service by publication pursuant to Ohio law. *See* S.D. Ohio L.R. 4.2.

same mechanisms, and allows the John Doe defendants to be served by publication because their identities are unknown. *See* Ohio R. Civ. P. 4.2(I); Ohio Rev. Code § 2703.24.

> **A.    Alternate Service Is Constitutional Because the Defendants Have Actual Notice of This Action**

Alternate service is consistent with procedural due process where it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *See Mullane*, 339 U.S. at 314; *Campbell*, 3 F. App'x at 383. The primary purpose of personal service of process is to ensure that a defendant has actual notice of the claims against him or her. *See Henderson*, 517 U.S. at 672; *King*, 694 F.3d at 659. Therefore, alternate methods of service are most appropriate, and raise the fewest due process concerns, where defendants have actual notice of the suit and are intentionally evading service. *Marvici* v. *Roche Facilities Maint. LLC*, 2021 WL 5323748, at *4–5 (S.D.N.Y. Oct. 6, 2021) ("[s]ervice by alternative means is all the more reasonable where a defendant demonstrably already has knowledge of the lawsuit.").

Here, alternate service is plainly consistent with due process because Defendants Berentz and Pohlhaus have actual notice of this suit, and are intentionally evading service to avoid being held accountable for their unlawful campaign against Springfield and its residents. *See supra* at 5–8. Pohlhaus has publicly referred to this lawsuit on at least six online streams between March 3 and April 16, as well as multiple posts on X (formerly Twitter). *See id.* In one such stream on March 3, 2025, Pohlhaus explicitly stated that he is attempting to avoid service in the hope that this case will be dismissed if Plaintiffs cannot timely serve him, including because in his opinion based on legal advice he has purportedly received, this Court may decline to permit alternate

service.[14]  As Pohlhaus put it, "they gotta serve us, they're probably gonna do it publicly [but] they may not even get approval to do that," in which case "they're fucked" unless Plaintiffs request an "extension or some other kike-y bullshit."[15]

The evidence also reflects that Berentz has actual notice of the lawsuit.  Shortly after this suit was filed, Berentz disappeared and could not be found by process servers.  *See supra* at 3.  It is no coincidence that Berentz and Pohlhaus disappeared at the same time.  Further, Pohlhaus's claim from his streams that "they gotta serve us," suggests coordination with Berentz, Pohlhaus's right-hand man and the only other individual Defendant that Plaintiffs have identified. *See supra* at 5.  And even if Pohlhaus and Berentz were not directly coordinating their efforts to evade service, it is not subject to serious doubt that Berentz, a senior member of the Blood Tribe and named Defendant in this lawsuit, is following Pohlhaus's streams and fundraising effort closely.

Moreover, Pohlhaus and the Blood Tribe are taking steps to fundraise for their legal defense in connection with this case through "Blood Tribe" channels, and have raised thousands of dollars to date for that purpose.  *See supra* at 6–7.  In other words, Defendants not only have actual notice of this case, but are preparing to defend this suit:  they simply prefer not to (undoubtedly because they have no credible defense for their atrocious and unlawful conduct), and are thus attempting to avoid this litigation entirely.  Constitutional due process does not require the Court to license such a tactic; on the contrary, Defendants' intentional evasion of service demands service by alternate means.  *See Mullane*, 339 U.S. at 314; *Henderson*, 517 U.S. at 672.

---

[14] *See* Christopher Pohlhaus (HAMMER), *BLUTCAST W/ CRUSTY*, odysee.com (March 3, 2025), https://odysee.com/@Hammer:3e/CRUSTY:0 at 1:25:04.
[15] *Id.*

**B.     Service by Publication is Also Warranted Under Ohio Law**

Rule 4(e)(1) of the Federal Rules of Civil Procedure provides that "an individual . . . may be served in a judicial district of the United States by following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."  The Ohio Rules of Civil Procedure permit service "by publication" upon "a party whose residence is unknown . . . where such service is authorized by law."  Ohio R. Civ. Proc. 4.4(A)(1).  Service by publication is authorized by Ohio law "where the defendant, being a resident of this state, has departed from the county of his residence with intent to delay or defraud his creditors or to avoid the service of a summons, or keeps himself concealed with a similar intent," among other circumstances.  Ohio Rev. Code § 2703.14(L).

As discussed above, Plaintiffs have not been able to locate the residences of Defendants Berentz and Pohlhaus.  *See supra* at 2–5; *see also* Ohio R. Civ. Proc. 4.4(A)(1).  Plaintiffs have also set forth the extensive efforts they have taken to ascertain Defendants' residences, which make abundantly clear that the residences cannot be ascertained with reasonable diligence.  *See id.*

1.     Berentz's and Pohlhaus's Residences Are Unknown to Plaintiffs After Exercising Reasonable Diligence

"[U]nder Ohio law, 'a plaintiff must exercise reasonable diligence in his attempt to locate a defendant before he is entitled to service by publication.'"  *Powell*, 2023 WL 3734237, at *2 (citations omitted); *see also* Ohio R. Civ. Proc. 4.4(A)(1).  Reasonable diligence requires "taking steps which an individual of ordinary prudence would reasonably expect to be successful in locating a defendant's address," such as "a check of the telephone book, the city directory, a credit bureau, county records (such as the auto title department or the board of elections), or an

inquiry of former neighbors." *Powell*, 2023 WL 3734237, at *2 (citations omitted); *see also In re Thompkins*, 875 N.E.2d 582, 587 (Ohio 2007) (defining "reasonable diligence" as "[a] fair, proper and due degree of care and activity, measured with reference to the particular circumstances; such diligence, care, or attention as might be expected from a man of ordinary prudence and activity" (citation omitted)).

Federal and state courts in Ohio have regularly found reasonable diligence where multiple good faith attempts at service were unsuccessful. *See, e.g.*, *Rice* v. *Kyte*, 2012-Ohio-841, ¶ 12 (Ohio Ct. App. 2d 2012) (five attempts by mail); *Obeidallah* v. *Anglin*, 2018 WL 1773118, at *5 (S.D. Ohio Apr. 13, 2018) (hiring a private investigation firm and attempting service at five addresses); *Hunter* v. *Rhino Shield*, 2019 WL 12240912, at *2 (S.D. Ohio Feb. 26, 2019) (searching national, state, county, city, and court databases, attempting to contact relatives and making one unsuccessful attempt at personal service).

As set forth above and in the Tracy Declaration, Plaintiffs have expended significant resources attempting to locate and serve the Defendants. *See supra* at 2–5. These efforts clearly exceed reasonable diligence, going beyond the efforts "an individual of ordinary prudence would reasonably expect to be successful." *In re Thompkins*, 875 N.E.2d at 587. Indeed, courts in this jurisdiction have regularly found similar but less intensive searches to constitute reasonable diligence. *See, e.g., Obeidallah*, 2018 WL 1773118, at *5 (finding that hiring one private investigation firm and attempts to serve defendant personally and by mail at five addresses, without extensive surveillance, constitutes reasonable diligence).

2.  Service by Publication Is Authorized by Ohio Law With Respect to Berentz.

Ohio law permits service by publication "where the defendant, being a resident of this state, has departed from the county of his residence with intent to delay or defraud his creditors

or to avoid the service of a summons, or keeps himself concealed with a similar intent."  Ohio Rev. Code § 2703.14(L).  According to Plaintiffs' exhaustive investigation, five of Berentz's possible addresses are in Ohio, including his most recent address.  *See* Tracy Decl. ¶¶ 4, 17, 35.  Berentz also has family members who reside in Ohio, and his vehicle is registered in Ohio.  *See id.* ¶¶ 4, 35.  Other than an erroneous western Pennsylvania address, *id.* ¶ 4, there is no indication that Berentz has left the state of Ohio since the Complaint was filed, much less established a residence elsewhere.

Plaintiffs' attempts to locate and serve Berentz also show that he is "keep[ing] himself concealed," with an intent "to avoid the service of [the] summons."  Ohio Rev. Code § 2703.14(L).  That Plaintiffs' extensive efforts to locate Berentz have been unsuccessful is sufficient, without more, to conclude that Berentz is concealing himself to evade service.  *See Powell*, 2023 WL 3734237, at *3; *Rhino Shield*, 2019 WL 12240912, at *2.  Plaintiffs' inability to serve Berentz despite the exercise of reasonable diligence supports an inference that the Defendant is "keep[ing] himself concealed" to avoid service of process, which will stand unless the defendant appears and presents evidence to the contrary.  *Powell*, 2023 WL 3734237, at *3 (citing *Brooks* v. *Rollins*, 9 Ohio St. 3d 8, 10–11 (1984)).  That inference is buttressed by the fact that Berentz has inexplicably left his most recent address seemingly for weeks—process servers did not see him enter or leave his Senecaville address during multiple days of surveillance, and neither Concentric nor Vantage have been able to locate him after extensive searches.  *See* Tracy Decl. ¶¶ 9, 11, 15, 18, 25, 26, 35–38.

Moreover, Pohlhaus's statements on his March 3 stream indicate the Blood Tribe leadership's shared intent to evade service.  *See supra* at 5.  It is no coincidence that Berentz and Pohlhaus fled their primary residences and went into hiding at the same time.  The only reasonable

15

inference that can be drawn is that Berentz, Pohlhaus, and likely other members of the Blood Tribe coordinated their plans to hide and evade service.

> 3.      Plaintiffs Should Also Be Permitted to Serve Pohlhaus by Publication or Any Other Alternate Method

For the same reasons that service by publication is justified with respect to Berentz, the Court should permit service by publication with respect to Pohlhaus, or, in the alternative, permit another appropriate method of alternate service.

As explained above and in the Tracy Declaration, Pohlhaus has notice of this lawsuit and is intentionally evading service.  He has regularly discussed the lawsuit on his live streams and is actively fundraising for the purported purpose of defending the suit.  *See supra* at 5–8.  Plaintiffs have been unable to locate him after expending significant resources on an exceedingly diligent and thorough search covering at least 24 attempts in six different states.  *See supra* at 2–5.  Because of these extensive efforts, Plaintiffs easily meet the "reasonable diligence" requirement to justify service by publication.  *Powell*, 2023 WL 3734237, at *2.

Like Berentz, service by publication is warranted as to Pohlhaus because he is keeping himself concealed to evade service of process.  *See* Ohio Rev. Code § 2703.14(L).  Unlike Berentz, Plaintiffs have not been able to reliably determine Pohlhaus's residency status, but that should be no barrier to service by publication.  Federal courts in Ohio have, in similar circumstances, deemed it "obvious" that "if the plaintiff, after exercising reasonable diligence, is unable to locate the defendant, plaintiff would also be unable to establish that defendant is a resident of Ohio," and that plaintiffs are therefore not required to prove a defendant's residency before resorting to service by publication.  *Wise* v. *T-Mann*, 2014 WL 4302536, at *2 (N.D. Ohio

16

Aug. 29, 2014).[16]  Plaintiffs' reasonable diligence here, along with Pohlhaus's unambiguous knowledge of this suit, warrant service by publication.  In fact, Pohlhaus himself has acknowledged the possibility of service by publication, effectively daring the Court to do it.  *See supra* at 5.

Even if Pohlhaus's unknown residence precludes service by publication—which it should not—service is still appropriate by other feasible means, including through social media, by email, or through Defendants' live streams where they read viewers' comments.  As explained above, Pohlhaus has actual notice of this action.  *Supra* at 5–8.  Courts in sister jurisdictions, faced with similar tactics to evade service, have permitted service by modern, electronic means.  For example, in *Murrell* v. *Patriot Front*, the Court permitted service via email and social media, among other methods, upon defendants whose residence was unknown.  2023 WL 7332881, at *1 (D. Mass. Nov. 7, 2023); *see also Marvici*, 2021 WL 5323748, at *4–5 ("as technology advances and modes of communication progress, courts must be open to considering requests to authorize service via technological means" . . . "Service by alternative means is all the more reasonable where a defendant demonstrably already has knowledge of the lawsuit."); *Kohler Co.* v. *Domainjet, Inc.*, 2012 WL 716883, at *3 (S.D. Cal. Mar. 5, 2012) (permitting email service).

Here, service on Pohlhaus by electronic means is an entirely reasonable solution. Plaintiffs have monitored Pohlhaus on social media and his online streams and could serve him swiftly via those channels—the very same channels Pohlhaus is utilizing to fundraise for his legal defense.  The Court should permit these methods of alternate service on Pohlhaus.

---

[16] In *Wise*, the court did not reach the issue of whether a non-resident could be served by publication because the court found the defendant in that case to be an Ohio resident.  Nevertheless, the court explicitly noted that the "defendant provides no case in which any court has rejected service by publication where plaintiff fails to establish that the defendant is a resident of Ohio." *Id.*

4.      The Blood Tribe Can Be Served Through Publication via Berentz or Pohlhaus

The Blood Tribe itself can also be served by publication through Berentz or Pohlhaus, both of whom are officers of the Blood Tribe. Under Fed. R. Civ. P. 17(b)(3), the law of the state in which the federal district court is located determines the ability of a plaintiff to sue a party other than an individual or corporation. The Blood Tribe is an "unincorporated nonprofit association," under Ohio law, meaning "an unincorporated organization, consisting of two or more members joined by mutual consent pursuant to an agreement, written, oral, or inferred from conduct, for one or more common, nonprofit purposes." Ohio Rev. Code § 1745.05(M).

As alleged in the Complaint, the Blood Tribe is an organization consisting of multiple members including all of the individual Defendants. *See* Compl. ¶ 47. The Blood Tribe operates for vile but nonprofit purposes including normalizing the swastika, building a white ethnostate in the United States, and glorifying Adolf Hitler. *See id.* ¶¶ 46–47. Members join the group by mutual consent that can be inferred from the Blood Tribe's joint demonstrations using matching attire and coordinated messaging, the Blood Tribe's process of recruitment through social media and subsequent hazing, and the Blood Tribe's initiation ritual during which members willingly cut themselves with a ceremonial spear. *See id.* ¶¶ 48–51.

Because the Blood Tribe is an unincorporated nonprofit association, it can be served through an officer under Ohio Rule of Civil Procedure 4.2(I). Berentz is an officer of the Blood Tribe because of his status as a leader of the group—as explained in the Complaint, Berentz coordinated the assault on Springfield, spoke on behalf of the Blood Tribe at Springfield's City meetings, and repeatedly led armed Blood Tribe members in marches threatening attendees of the Jazz and Blues festival and Mayor Rue at his home. *See* Compl. ¶¶ 59, 66–71, 88; *supra* at 2. Pohlhaus is likewise an officer of the Blood Tribe—he is the founder and self-avowed leader of

18

the group, and speaks for the Blood Tribe through his live streams and fundraisers.  *See* Compl. ¶ 47; *supra* at 2–8.  Therefore, the Blood Tribe itself can be served through either Berentz or Pohlhaus under Ohio R. Civ. P. 4.2(I), whether through publication or any other means the Court permits.  The Court has already issued a summons for the Blood Tribe "c/o" Berentz and Pohlhaus. *See* Dkt. 10.  If the Court deems it appropriate, Plaintiffs will publish a third notice naming the Blood Tribe as an organization in addition to the notices naming Berentz and Pohlhaus.

### 5.    The John Doe Defendants Can Be Served by Publication

Ohio law also permits service by publication as to the John Doe defendants.  Service by publication is authorized by law where "the name and residence of a necessary party are unknown to the plaintiff."  Ohio Rev. Code § 2703.24.  Plaintiffs' investigators have taken significant efforts to identify John Does 1 through 7, but have not yet definitively identified any of them.  The difficulty in identifying these defendants is due in large part to the fact that they concealed their identities using masks and anonymous accounts while threatening Springfield and its residents.  Compl. ¶¶ 59, 88.  Discovery from Pohlhaus, Berentz, and third parties may be necessary to definitively identify the John Doe defendants.  In light of Plaintiffs' reasonable diligence in seeking to locate John Does 1 through 7, the Court should permit service by publication with respect to these defendants.

## III.    THE TIME TO EFFECTUATE SERVICE SHOULD BE EXTENDED

The standard time limit to serve a defendant is 90 days from the date the complaint is filed, meaning here the default deadline for service is May 7.  Fed. R. Civ. P. 4(m).  An extension of the time to complete service is required for Plaintiffs to effectuate service by publication. Service by publication requires six weeks of consecutive publication.  *See* Ohio R. Civ. P. 4.4(A)(1).  Such an extension is appropriate—indeed, even mandatory—where, as here, Plaintiffs have good cause for not serving Defendants within 90 days of filing the complaint.  *Osborne*, 217

F.R.D. at 406 (Rice, J.) (emphasizing mandatory nature of rule 4(m)'s requirement that "a district court *shall* extend the time for service, however, if a plaintiff demonstrates good cause . . ." (emphasis in original)).  The Southern District of Ohio regularly finds good cause to extend the deadline for service so that service by publication can be completed.  *See, e.g.*, *Powell*, 2023 WL 3734237, at \*3; *Obeidallah*, 2018 WL 1773118, at \*7.

As explained above and in the Tracy Declaration, Plaintiffs have made extensive and diligent efforts to serve the Defendants, but have not yet had success.  *See supra* at 2–5.  Such "reasonable and diligent effort[s] to effect service" constitute good cause to extend the time for service.  *Habib*, 15 F.3d at 74 (6th Cir. 1994).  Defendants' efforts to evade service by fleeing their primary residences and concealing their locations constitute further good cause for Plaintiffs' inability to serve them within 90 days.  *Wise* v. *Dep't of Def.*, 196 F.R.D. at 54 (good cause may exist where a defendant intentionally evades service).

Further, Plaintiffs' investigation into the identity of the John Doe defendants is ongoing.  Additional time will allow Plaintiffs a greater opportunity to identify, locate, and serve these defendants, all of whom Plaintiffs have been diligently attempting to locate in the time since the complaint was filed.

## **CONCLUSION**

Notwithstanding Plaintiffs' exceedingly diligent efforts to locate and serve the Defendants, Defendants have—by their own admission—intentionally evaded service, in the hope that this Court may not grant "approval" of alternate service and thereby permit them to avoid accountability for the atrocious harassment campaign they waged against the City of Springfield and its residents.  Plaintiffs respectfully request that the Court permit alternate methods of service on Defendants, and extend the deadline for service so that alternate service may be effectuated, so that Plaintiffs may vindicate their legal rights on the merits in this Court.

Dated: April 25, 2025

                                                  Respectfully submitted,

James Pasch (0086809)                             /s/ *Glen R. McMurry*
ANTI-DEFAMATION LEAGUE                            Glen R. McMurry (0082600)
605 Third Avenue                                  TAFT STETTINIUS & HOLLISTER,
New York, NY 10158-3650                           LLP
Tel: 212-885-7700                                 40 North Main Street, Suite 1700
Email: jpasch@adl.org                             Dayton, OH 45423-1029
                                                  Tel: 937-228-2838
                                                  Fax: 937-228-2816
                                                  Email: gmcmurry@taftlaw.com


                                                  Daniel J. Kramer (*pro hac vice*)
                                                  Gregory F. Laufer (*pro hac vice*)
                                                  Marques S. Tracy (*pro hac vice*)
                                                  PAUL, WEISS, RIFKIND, WHARTON
                                                  & GARRISON LLP
                                                  1285 Avenue of the Americas
                                                  New York, NY 10019-6064
                                                  Tel: 212-373-3000
                                                  Fax: 212-757-3990
                                                  Email: dkramer@paulweiss.com
                                                       glaufer@paulweiss.com
                                                       mtracy@paulweiss.com

                                                  Karen L. Dunn (*pro hac vice*)
                                                  2001 K Street, N.W.
                                                  Washington, DC 20006-1047
                                                  Tel: 202-223-7300
                                                  Fax: 202-223-7420
                                                  Email: kdunn@paulweiss.com

                                                  ***Counsel for Plaintiffs***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on April 25, 2025, a copy of the foregoing motion was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's ECF system.


Dated:  April 25, 2025                                      */s/ Glen R. McMurry*
          New York, New York                               Glen R. McMurry