**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| THE CITY OF SPRINGFIELD, OHIO, MAYOR ROB RUE, ASSISTANT MAYOR DR. DAVID ESTROP, CITY COMMISSIONERS KRYSTAL BROWN and TRACEY TACKETT, and TAYLOR FLORA, CASEY ROLLINS, JESSICA SHAFER, and RANDALL COMER,<br><br>Plaintiffs,<br><br>v.<br><br>The BLOOD TRIBE, CHRISTOPHER POHLHAUS, DRAKE BERENTZ, and JOHN DOES 1–7,<br><br>Defendants. | **Civil Action No.** 3:25-cv-33<br><br>District Judge Walter H. Rice<br><br>Magistrate Judge Caroline H. Gentry |

**DECLARATION OF MARQUES TRACY IN SUPPORT OF PLAINTIFFS' MOTION
FOR ALTERNATE SERVICE AND TO EXTEND THE TIME TO EFFECT SERVICE**

I, Marques S. Tracy, am an attorney admitted to practice before this court *pro hac vice*. I am counsel at the law firm Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul, Weiss"), representing Plaintiffs in the above-captioned action. Under penalty of perjury, pursuant to 28 U.S.C. § 1746, I declare as follows:

1. I have personal knowledge of the facts set forth herein and coordinated and/or directed the various service attempts and surveillance efforts described in this declaration.

2. On February 6, 2025, Plaintiffs filed this action against Defendants Christopher Pohlhaus ("Pohlhaus"), Drake Berentz ("Berentz"), the unincorporated nonprofit association known as the "Blood Tribe," and John Does 1–7 (ECF No. 1, the "Complaint").

3. Before and after the filing of the Complaint, I directed and coordinated research efforts to identify potential residences for Pohlhaus and Berentz for the purpose of effectuating personal service of process.

4. By February 17, 2025, using public online searches, counsel for Plaintiffs had identified two potential addresses for Pohlhaus: 2200 W. Dickinson St., Apt. 51, Bozeman, Montana 59718 ("the Bozeman Address") and 11435 North 93rd Ave., Peoria, Arizona 85345 ("the Peoria Address"), and two potential addresses for Berentz: 58300 Lashley Road, Senecaville, Ohio 43780 ("the Senecaville Address"), used for Berentz's vehicle registration, and 158 Railroad St., Friedens, PA 15541 ("the Friedens Address").

5. At the time, the Bozeman Address was believed to be Pohlhaus's most recent residence and the Senecaville Address was believed to be Berentz's most recent residence.

6. On February 17, 2025, Plaintiffs requested the issuance of summonses for Pohlhaus using the Bozeman Address, for Berentz using the Senecaville Address, and for the Blood Tribe through both Pohlhaus and Berentz. *See* ECF Nos. 7–9.

7. The Court issued the requested summonses on February 18, 2025. ECF No. 10.

8. On or about February 18, Plaintiffs retained process servers through Veritext Legal Solutions ("Veritext"). Between February 19 and March 7, process servers from Veritext made at least eight attempts to serve Pohlhaus and the Blood Tribe at the Bozeman Address without success.

9. From February 20 through February 22, Veritext process servers extensively monitored the Senecaville Address and made at least three attempts to personally serve Berentz there without success.

10. On February 25, Veritext process servers attempted to serve Berentz at the Friedens Address. The process servers determined that Berentz no longer lived there when, in the course of their attempt to effectuate service, the current resident at the Friedens Address explained that Berentz was no longer the current tenant of the property.

11. The process servers asked the current resident of the Friedens Address whether they had any knowledge of Berentz's current residence. The current resident stated that they did not, but that their neighbors had rented the apartment to them. The process servers attempted to inquire with those neighbors, but could not successfully contact them as they were away.

12. On February 25, Veritext process servers attempted service on Pohlhaus at the Peoria Address. When the process servers encountered the current residents, they were informed that Pohlhaus was no longer living there.

13. The process servers inquired as to Pohlhaus's whereabouts with the current resident of the Peoria Address, who stated that she had lived at the address for two years and

sometimes received mail addressed to Pohlhaus, but did not know him or where he currently resides. The process servers also attempted to speak to neighbors without success.

14. On February 25, after these attempts to locate and serve Berentz and Pohlhaus failed, Plaintiffs hired Concentric Advisors ("Concentric"), a security and intelligence firm, to assist in locating the Defendants.

15. Concentric immediately began scouring the internet and public records for any sign of Pohlhaus and Berentz. Their research included databases of public information including DMV records, court records, property records, and credit reports. Concentric also began monitoring Pohlhaus and Berentz on social media to determine whether their statements could indicate their location. Along with Paul, Weiss, Concentric also monitored live streams that Pohlhaus creates on "odysee.com," a video sharing website. Concentric also began tracking Blood Tribe-affiliated accounts on social media to identify the John Doe defendants.

16. On or about March 1, Concentric identified two more potential addresses for Pohlhaus: 136 Dam Road, Lee, Maine 04455 ("the Lee Address") and 212 Lambert Road, Brewer, Maine 04412 ("the Brewer Address").

17. Concentric also identified three additional addresses associated with Berentz, all in Washington County, Ohio: 101 Evans St, New Matamoras, Ohio 45767; 104 Riley Dr, Marietta, Ohio 45750; and 46789 State Route 7, New Matamoras, Ohio 45767 (collectively, "the Washington County Addresses").

18. On each of March 6, 8, and 9, Veritext process servers unsuccessfully attempted service at each of the Washington County Addresses, for a total of nine attempts in Washington County. Process servers were unable to speak with any current residents of the Washington County Addresses, and Berentz was not present at any location.

3

19. Plaintiffs filed Affidavits of Non-Service for the Veritext service attempts described in ¶¶ 8–18 on April 25, 2025.  ECF No. 12.

20. On or about March 5, 2025, Plaintiffs retained Court Support, Inc. ("Court Support"), another firm specializing in service of process, to attempt personal service on Pohlhaus at the Lee and Brewer Addresses.

21. Court Support attempted service on Pohlhaus at the Lee Address on March 11, but was unsuccessful.  Court Support was informed by the current resident that Pohlhaus had left the Lee Address in 2023 and moved "out west."

22. On March 14, Court Support's process servers attempted to serve Pohlhaus at the Brewer Address.  Pohlhaus no longer resided at that address, and the current resident told the process server that he did not know Pohlhaus and that the property was currently being used as a vacation rental.

23. Plaintiffs filed Affidavits of Non-Service for the Court Support service attempts described in ¶¶ 20–22 on April 25, 2025.  ECF No. 12.

24. On March 6, after the initial attempts to serve Berentz at the Washington County addresses failed, Plaintiffs hired Vantage Intelligence ("Vantage"), a second security and intelligence firm, to assist in locating Pohlhaus and Berentz and identifying the John Doe Defendants.

25. Like Concentric, Vantage immediately began searching public databases including DMV records, court records, property records, and credit reports to locate Pohlhaus and Berentz, and began tracking Blood Tribe-affiliated accounts on social media to identify the John Doe Defendants.

26. Vantage also ordered merchandise from two online stores promoted by Berentz and Pohlhaus online: "Dissident Mind Books" and "The Shekel Shop" to attempt to trace the shipping addresses back to Pohlhaus and/or Berentz, and collected information on business entities and phone numbers associated with Berentz, Pohlhaus, and/or the Blood Tribe.

27. On or about March 14, the merchandise that Vantage ordered from the online stores arrived. Upon research into each shipping address, neither appeared to be associated with any Defendant.

28. On or about March 14, Vantage identified another potential address associated with Pohlhaus and owned by his parents: 326 Bullock Cir., Richland, Mississippi 39218 ("the Richland Address").

29. By monitoring Pohlhaus's online streams, counsel for Plaintiffs observed Pohlhaus making several statements that suggested he was staying in Mississippi. In a video originally posted on March 6, Pohlhaus stated that he planned to one day run for office in Mississippi and that he was "proud to be a Mississippian."

30. On March 25, investigators from Vantage extensively monitored the Richland Address, but did not observe Pohlhaus entering or leaving.

31. On March 29, investigators from Vantage again extensively monitored the Richland Address. Vantage investigators made contact with Pohlhaus's mother at the Richland Address. She informed the investigators that Pohlhaus was not there, and only visited occasionally.

32. On April 3, Vantage investigators once again extensively monitored the Richland Address, ensuring that they were present while Pohlhaus broadcast his online stream. Again, the investigators did not observe Pohlhaus entering or leaving the property.

33. Vantage investigators also took note of two vehicles that came to and from the Richland Address throughout the monitoring periods. DMV record searches revealed that neither vehicle belonged to Pohlhaus.

34. Concluding that Pohlhaus was not residing at the Richland Address, the Vantage investigators did not attempt service.

35. Vantage later identified a fourth Washington County, Ohio address associated with Berentz: 1201 Williamson Avenue, New Matamoras, Ohio 45767 ("the fourth Washington County Address"). Vantage investigators visited this location on April 17, recording the license plate numbers on the two vehicles parked in the driveway.

36. DMV record searches revealed that one vehicle was registered to a female relative of Berentz, possibly his grandmother, and the other was registered to a male relative of Berentz, possibly a cousin.

37. During the April 17 visit, Vantage investigators did not observe Berentz entering or leaving the fourth Washington County Address, or see any other indication that he was present there.

38. Concluding that Berentz was not residing at the fourth Washington County Address, the Vantage investigators did not attempt service.

39. Notwithstanding these efforts, I am unable to identify the residences of either Pohlhaus or Berentz, and, accordingly, personal service of a summons cannot be made on either Pohlhaus or Berentz.

40. While Concentric and Vantage have identified several potential John Doe Defendants through monitoring Blood Tribe-affiliated accounts on social media, they have not yet definitively identified any of the John Doe Defendants.

41. John Doe 1 cannot be identified because he left voicemails and messages on Plaintiff Taylor Flora's phone from an anonymous number. John Doe 2 cannot be identified because he mailed Plaintiff Taylor Flora a package with a false return address associated with a P.O. Box in Slovakia. John Doe 3 cannot be identified because he sent emails to Plaintiff Taylor Flora from an anonymous email address. John Doe 4 cannot be identified because Plaintiff Taylor Flora did not answer the door when he approached her home and stood menacingly outside her door.

42. John Doe 5 cannot be identified because he anonymously sent another individual to Plaintiff Jessica Shafer's home and harassed her using an anonymous social media account.

43. John Doe 6 cannot be identified because he anonymously sent another individual to Plaintiff Randall Comer's home.

44. John Doe 7 cannot be identified because he coordinated the assault on Springfield in Blood Tribe chats using the pseudonym "Andail Chanter."

45. Because Plaintiffs have not definitively identified the John Doe Defendants, I am unable to identify the residences of the John Doe Defendants after reasonable diligence and, accordingly, personal service of a summons cannot be made on any of the John Doe Defendants at this time.

46. As the efforts described above make clear, the residences of the parties to be served, Defendants Berentz and Pohlhaus, cannot be ascertained with reasonable diligence.

47. Plaintiffs' attempts to effect service of process on Berentz, Pohlhaus, and the John Doe Defendants have been reasonably calculated, under all the circumstances, to apprise them of the pendency of this action and afford them an opportunity to present their objections.

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 25, 2025 in New York, New York.

*/s/ Marques S. Tracy*
Marques S. Tracy

8

## CERTIFICATE OF SERVICE

I hereby certify that, on April 25, 2025, a copy of the foregoing motion was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's ECF system.

Dated: April 25, 2025　　　　　　　　　　　　　　　／s／ *Glen R. McMurry*
　　　New York, New York　　　　　　　　　　　　　Glen R. McMurry