IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF OHIO

FILED
RICHARD W. NAGEL
CLERK OF COURT

AUG 25 2025 3:35 P

U.S. DISTRICT COURT
SOUTHERN DISTRICT
OF OHIO-DAYTON

CITY OF SPRINGFIELD, OHIO, et al., :

                              :

      Plaintiffs,            : Case No. 3:25-cv-00033

                              :

v.                              : District Judge Thomas M. Rose

                              : Magistrate Judge Caroline H. Gentry

BLOOD TRIBE, et al., :

                              :

     Defendants.          :

                              :

## DEFENDANT'S RESPONSE TO PLAINTIFF'S MEMORANDUM

## IN OPPOSITION TO MOTION TO DISMISS

### I. Introduction

1. The Plaintiffs' claims of unlawful conduct rely on conclusory assertions, strained and disingenuous interpretations of protected speech and lawful assembly, speculative inferences unsupported by actual evidence, and generalized allegations of group misconduct.
2. While they repeatedly accuse me of orchestrating and my "associates" of participating in a "campaign of harassment and intimidation" against Springfield and individual residents, their brief fails to identify **any admissible evidence**—such as direct communications, recordings, or corroborated witness

accounts—showing that I or any of my alleged "associates" engaged in unlawful acts or that I incited others to do so.

3. The Complaint's core theory rests on erroneously interpreting protected speech and lawful public demonstrations as "incitement" or "threats," when the actual record, which includes statements from Springfield's Mayor, Plaintiff Rob Rue, shows these events were peaceful, lawful, and under law enforcement's control[1]. This is precisely the type of speculative pleading the Supreme Court rejected in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).


**City of Springfield, Ohio - Government**
August 10, 2024

We want to inform you that a hate group from outside of our community made an appearance in the downtown core block today. Their presence is deeply concerning, and our public safety services took the necessary steps to ensure the safety and well-being of everyone in our community was maintained.

Mayor Rob Rue commented on the situation stating, "There was an attempt to disrupt our community by an outside hate group. Nothing happened, except they expressed their First Amendment rights. Our Police Division was aware and in control the entire time."

We stand united against hate and discrimination and remain committed to upholding the values of respect and inclusivity within our community. Let's continue to support one another and uphold these values that define our community.

Thank you.

 419                                                                 458 comments   231 shares

## II. The Timeline and Causation Allegations Are Speculative

1. Plaintiffs' narrative collapses when examined against the actual sequence of events.
2. The **earliest public mention** of Springfield by Blood Tribe was on the Blood Tribe Ohio telegram page on **July 22, 2024**[2].
3. Blood Tribe's **first demonstration** in Springfield occurred on **August 10, 2024**[3].

---

[1] https://www.facebook.com/share/p/16fLXkyTPf/
[2] https://t.me/bloodtribeohio/906
[3] See:
https://extremismterms.adl.org/resources/article/summer-hate-white-supremacist-activity-memorial-labor-day

4. On **August 18, 2024,** I posted, "ALL GROUPS AND ORGS NEED TO HIT SPRINGFIELD, OHIO[4]."
5. On **August 27th, 2024,** Defendant Drake Bernentz spoke at the Springfield city council meeting[5].
6. On **September 1, 2024,** Patriot Front held a peaceful, lawful demonstration in Springfield[6], after which I reiterated: "Hell yeah, everyone must hit Springfield[7]." Both comments were made in the context of calling for additional lawful public demonstrations—not harassment or threats.
7. On **September 10th, 2024,** Donald Trump and Kamala Harris had their presidential debate where Trump name drops Springfield Ohio saying "they're [Haitians] eating the dogs, the people [Haitians] that came in, they're [Haitians] eating the cats[8]."
8. In response to Trump mentioning Springfield during the presidential debate on **September 10th, 2024,** that same night I posted "BT pushed Springfield into the public consciousness.[9]"
9. On **September 12th, 2024,** the first bomb threats were made[10].
10. On **September 12th, 2024,** Springfield mayor Rob Rue made his "it was their ["federal politicans"] words that did it [bomb threats]" comment[11].
11. Also on **September 12, 2024,** the Ku Klux Klan distributed flyers in Springfield Ohio[12].
12. On **September 13th, 2024,** bomb threats are made to 3 schools in Springfield and individual City Commissioners[13]

---

[4] See: https://t.me/pohlhaushammer/2834
[5] See: Springfield city meeting sees protest, removal of Nazi group speaker amid Haiti tension
[6] See: https://t.me/PatriotFrontNews/508
[7] See: https://t.me/pohlhaushammer/2897
[8] See: 'They're eating the cats': Trump rambles falsely about immigrants in debate | US elections 2024 | The Guardian
[9] https://t.me/pohlhaushammer/2929
[10] See: Ohio city at center of pet eating rumor receives bomb threats
[11] See: https://abc6onyourside.com/news/local/springfield-mayor-on-politicians-after-bomb-threat-it-was-their-words-that-did-it
[12] See: KKK fliers found in Springfield, OH connected to KY city | Lexington Herald Leader
[13] See: Springfield mayor seeks 'help not hate' as more bomb threats close schools, offices

13. On **September 14th, 2024,** the Proud Boys conducted a peaceful and lawful march in Springfield Ohio[14].
14. Also on **September 14th, 2024,** 2 hospitals went on lockdown over bomb threats[15].
15. On **September 15th, 2024,** Donald Trump expressed his desire to visit Springfield Ohio[16].
16. On **September 15th, 2024,** Wittenberg University closed its campus due to a shooting threat. Clark State also closed its campus due to shooting and bomb threats[17].
17. On **September 16th, 2024,** two elementary schools were evacuated due to bomb threats[18].
18. On **September 19th,** Springfield City Commissioners received bomb and death threats. Bomb threats were also made to grocery stores and hotels in Springfield, Clark State also received another threat[19].
19. On **September 28th, 2024,** Blood Tribe marched around Springfield's town hall and demonstrated in front of Mayor Rob Rue's house[20].
20. Also on **September 28th, 2024,** White Lives Matter demonstrated in front of City Hall in Springfield.
21. The bomb threats did not begin until **September 12, 2024** and lasted approximately 7 days. These threats came **52 days** after Springfield's first mention by Blood Tribe, **33 days** after Blood Tribe's first demonstration, and **25 days** after my **"ALL GROUPS AND ORGS NEED TO HIT SPRINGFIELD, OHIO"** Telegram post, **11 days** after my **"Hell yeah, everyone must hit Springfield"** Telegram post in acknowledgement of Patriot Front's peaceful and lawful demonstration in front of City Hall, and the final September 28th demonstration was **9 days removed** from the last threats that are publicly

---

[14] See: Proud Boys Marching In Springfield Amid Haitian Immigrants 'Pet Eating' Claims? Video Surfaces | US News - Times Now
[15] See: 2 Springfield medical sites among bomb threats Saturday; city working with FBI
[16] See: Trump plans to visit Springfield, Ohio, the site of his baseless claims about Haitian immigrants
[17] See: UPDATE: Wittenberg moves to online classes Monday after pair of threats
[18] See: Two more Springfield schools evacuated due to bomb threats
[19] See: Springfield grocery stores evacuated following threat
[20] See: Blood Tribe | ADL

known, but crucially, the threats started **only a day and a half** after then presidential candidate Donald Trump claimed during a televised debate before 67 million viewers that Haitian migrants in Springfield were eating cats and dogs. This national amplification by massively influential political figures including Donald Trump and J.D. Vance created a media frenzy dwarfing any influence attributable to me or Blood Tribe.

22. As for my "BT pushed Springfield into the public consciousness.[21]" Telegram post, I was acknowledging the role my organization played in the reason why Trump mentioned Springfield in the first place. Crucially, this was prior to any threats or harassment, and my statement is not tantamount to condoning or in any way inciting or causing the threats and harassment.

23. During the media frenzy, many other right-wing organizations conducted peaceful and lawful public demonstrations (e.g. Proud Boys and White Lives Matter) or did some other form of political activism (e.g. Ku Klux Klan) in Springfield. Which was my intention in saying "ALL GROUPS AND ORGS NEED TO HIT SPRINGFIELD, OHIO."

24. This timeline makes Plaintiffs' causation theory untenable. Far from showing that my speech incited unlawful threats, the sequence demonstrates that the alleged bomb threats were more closely tied to high-profile national commentary than to any local demonstrations by Blood Tribe or statements by me.

25. Further, both the FBI and Ohio Governor Mike DeWine have indicated that the bomb threats likely originated from overseas actors[22], not from me or any alleged "associates" of Blood Tribe. Even Springfield's own mayor, Plaintiff Rob Rue, attributed the threats to "federal politicians" (i.e. Donald Trump and JD Vance) and their rhetoric[23], not to me or Blood Tribe.

---

[21] https://t.me/pohlhaushammer/2929
[22] See: https://www.nbcnews.com/news/us-news/30-bomb-threats-made-springfield-ohio-false-pets-claims-rcna171392
[23] See: https://www.nbcnews.com/news/us-news/30-bomb-threats-made-springfield-ohio-false-pets-claims-rcna171392

26. No **forensic, digital, or testimonial evidence** ties me or any "associates" of Blood Tribe to the making of bomb threats or any of the alleged harassment. Plaintiffs instead rely on speculation, inferring from social media posts and political opposition that lawful demonstrations somehow equate to unlawful conduct—an inference the **First Amendment squarely forbids**. See *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 928 (1982). Mere temporal proximity or shared rhetoric is not enough to establish conspiracy or causation. *Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012).
27. Accordingly, the timeline itself demonstrates that Plaintiffs' causation theory is speculative at best, and insufficient as a matter of law.

## III. Plaintiffs Fail to Plausibly Allege a Civil Rights Conspiracy under 42 U.S.C. § 1985(3)

1. To state a § 1985(3) claim, Plaintiffs must allege with particularity an agreement to deprive a protected class of its rights, and an overt act causing injury. *Vakilian v. Shaw*, 335 F.3d 509, 518 (6th Cir. 2003). Plaintiff's counsel ignores the absence of any factual link between me and the alleged overt acts. Instead relying entirely on social media posts allegedly made by me or an "associate" of Blood Tribe to support any and all claims of conspiracy and or harassment.
2. **No Agreement or Direction to Commit Unlawful Acts**: The central quote—My call for "ALL GROUPS AND ORGS NEED TO HIT SPRINGFIELD, OHIO" and the use of the word "hit"—is mischaracterized. Context shows "hit" referred to inviting other organizations (e.g., Patriot Front, Proud Boys, White Lives Matter among others) to conduct **peaceful lawful public demonstrations**, not to harass, make threats, or otherwise commit any unlawful acts. In the timeline of events, my quote came 2 weeks before a peaceful and lawful demonstration Patriot Front performed in front of the town hall in Springfield on September 1st 2024[24]. In reaction to this demonstration I re-iterated a variation of the quote saying "Hell yeah, everyone must hit Springfield.[25]" This clearly demonstrates

---

[24] See: https://t.me/PatriotFrontNews/508
[25] See: https://t.me/pohlhaushammer/2897

that my intention in saying what I said was to promote peaceful and lawful demonstrations against the Haitian immigration into Springfield. Lawful advocacy, even if offensive to some, is protected by the First Amendment. See *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 928 (1982).

3. **No Evidence of Participation in Threats**: The Complaint lumps me and Blood Tribe together with unknown individuals responsible for 33 bomb threats, but investigations by the FBI and statements from Ohio Governor DeWine indicate these threats likely originated overseas after a viral media event[26]. The NBC article previously cited in this document was cited in the original complaint (Page 4 4), and Plaintiff's counsel conveniently ignores the fact that their citation does not support, but rather outright contradicts, their claim that me or any purported "associate" of Blood Tribe acting under my command or incited by me made these threats. The Mayor of Springfield, Plaintiff Rob Rue, lays the blame at the feet of "federal politicians" (an obvious allusion to Donald Trump, JD Vance, and other Republicans amplifying the issue of Haitian immigration into Springfield) saying "it was their ["federal politicians"] words that did it [bomb threats][27]." It is also important to note that, according to the news article cited previously, these threats came a day and a half after then presidential candidate Donald Trump mentioned the Haitians in Springfield supposedly eating cats and dogs on the presidential debate stage while 67 million people watched. Mere temporal proximity or shared political rhetoric does not establish conspiracy. See *Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012).

## IV. Statements made by Defendant Drake Bernentz Does Not Constitute True Threats

1. Speech is unprotected if it constitutes a "true threat"—a serious expression of intent to commit unlawful violence. *Virginia v. Black*, 538 U.S. 343, 359 (2003).

---

[26] See: https://www.nbcnews.com/news/us-news/30-bomb-threats-made-springfield-ohio-false-pets-claims-rcna171392

[27] See: https://abc6onyourside.com/news/local/springfield-mayor-on-politicians-after-bomb-threat-it-was-their-words-that-did-it

Drake Bernentz's (herein referred to as Defendant) "word of warning" at the City Commission meeting was a **prediction** about potential increases in crime if certain policies continued, not a threat of personal action. The unabridged remarks, delivered calmly and while unarmed, were followed by Defendant's peaceful departure after a brief moment of attempting to continue speaking.

2. The same reasoning in the previous paragraph applies to Defendant's speech in front of Mayor Rob Rue's house. This speech was the same speech he attempted to give at the City Council meeting.
3. This is relevant to me as the Plaintiffs use this incident of protected speech as evidence to support their conspiracy claims against me. Despite the disingenuous interpretation on the part of the Plaintiffs counsel, this misinterpretation of protected speech does not transform it into a true threat, and therefore, does not serve as evidence of me inciting, encouraging, or otherwise participating in any unlawful conduct.

## V. Plaintiffs' State Law Claims Fail

1. I deny committing, inciting, or having any knowledge of any of the alleged phone calls, packages, or men sent to the Plaintiff's houses. Plaintiffs' state law claims **do not satisfy the elements** of the Telecommunications Harassment, Menacing, and Intentional Infliction of Emotional Distress counts against me.
2. **Telecommunications Harassment** (*Ohio Rev. Code § 2917.21*): This statute requires proof that the defendant **made the prohibited communication** directly to the victim or with the intent to abuse, threaten, or harass. See *State v. Kronenberg*, 2017-Ohio-9291, 22 (no violation where speech was public and not directly sent to the victim). Plaintiffs identify no specific direct messages or calls made by me.
3. **Menacing** (*Ohio Rev. Code § 2903.22*): To establish menacing, Plaintiffs must prove the defendant knowingly caused them to believe they would suffer physical harm. The posting of addresses or names, without any accompanying physical approach, direct threat, or evidence of intent to harm, does not meet this standard.

4. **Intentional Infliction of Emotional Distress (IIED)**: Ohio law demands "extreme and outrageous conduct" that goes beyond all possible bounds of decency. *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 375 (1983). Ohio courts have been reluctant to find IIED without proof of direct threats, stalking, or conduct likely to cause severe emotional distress in a reasonable person. Plaintiffs here provide no medical evidence, testimony of severe emotional impairment, or facts showing I intended to cause or incite such distress.
5. Accordingly, the facts make the Plaintiffs' allegations of telecommunications harassment, menacing, or IIED legally insufficient.

## VI. The Intracorporate Conspiracy Doctrine Bars Plaintiffs' § 1985 Claims

1. In addition to the evidentiary gaps, Plaintiffs' conspiracy claims fail as a matter of law under the intracorporate conspiracy doctrine.
2. The Sixth Circuit has long applied the doctrine to § 1985 claims. See *Doherty v. American Motors Corp.*, 728 F.2d 334, 339 (6th Cir. 1984); *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 510 (6th Cir. 1991). Under this rule, "if all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy".
3. Plaintiffs have sued only Blood Tribe and individuals they allege to be its "associates." By their own pleading, all alleged conspirators are part of the same unified entity. They cannot now escape the doctrine by recharacterizing the group as "unincorporated" for litigation purposes while treating it as a single, organized body in their factual narrative.
4. Ohio courts also recognize the doctrine's applicability in state law conspiracy claims. See *Innovative Architectural Planners, Inc. v. Ohio Dept. of Adm. Servs.*, 2024-Ohio-824, ¶¶ 13-14.
5. Plaintiffs cite *Sealed Plaintiff 1 v. Patriot Front*, 2024 WL 1395477, to argue the doctrine is inapplicable to unincorporated associations. That case is distinguishable however: the court there relied on specific factual allegations that Patriot Front members operated autonomously, outside any centralized control. Here, Plaintiffs allege the opposite—tight central leadership, coordinated

messaging, and direct adherence to my purported directives—precisely the sort of unified organizational structure that triggers the doctrine.

6. Even if Plaintiffs argue for the "civil rights" exception recognized in *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837 (6th Cir. 1994), that exception applies only where the entity itself is formed for the explicit purpose of violating civil rights. Plaintiffs' reliance on rhetoric and political ideology does not establish that Blood Tribe was legally formed with such a purpose, nor that all alleged acts were within the scope of such an illegal objective.

7. Accordingly, the intracorporate conspiracy doctrine independently bars all conspiracy counts in this action.

## VII. Plaintiffs' Reliance on Speculation and Anticipated Discovery

1. Plaintiffs attempt to excuse the lack of specific allegations tying me to the alleged "doxxing, harassment, bomb threats, and death threats" by asserting that Defendants acted anonymously and that discovery will eventually reveal my participation. This argument fails for several reasons.

2. **Pleading Standards Require Plausibility Before Discovery**: The Supreme Court has been clear that Rule 8 requires a complaint to contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court in *Twombly* explicitly rejected the notion that plaintiffs may rely on speculative allegations in the hopes that discovery will later produce supporting evidence:

3. "[I]t is one thing to be cautious before dismissing an antitrust complaint in advance of discovery, but quite another to forget that proceeding to discovery can be expensive. ... It is no answer to say that a claim just shy of plausible entitles a plaintiff to discovery." *Twombly*, 550 U.S. at 559.

4. Thus, Plaintiffs must first plead sufficient non-conclusory facts to nudge their claims "across the line from conceivable to plausible." Id. at 570. They have not done so in this case.

5. **Speculation About "Anonymous" Conduct Does Not Substitute for Facts:** The Plaintiffs' reliance on Blood Tribe's anonymity—wearing masks or posting online without attribution—is insufficient to impute liability to me without concrete factual allegations that I personally engaged in or directed unlawful acts. Courts consistently reject conspiracy claims that rest on generalized group conduct without facts tying the specific defendant to the overt act. See *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) (conclusory allegations of agreement are insufficient to state a §1985(3) conspiracy claim).

6. **Fishing Expeditions Are Barred:** The Federal Rules do not permit plaintiffs to file speculative complaints and then use discovery to search for a viable claim. As the Sixth Circuit has made clear:

7. "Rule 8 does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011) (affirming dismissal where plaintiff sought discovery to substantiate bare allegations).

8. Plaintiffs' suggestion that discovery will reveal my "private knowledge" (Footnote 2, pp. 8 and 9 of the Plaintiff's response to my Motion to Dismiss) is exactly the type of fishing expedition barred under *Twombly*, *Iqbal*, and Sixth Circuit precedent.

9. **The Cases Plaintiffs Cite Are Distinguishable:** Plaintiffs cite *Abels v. Farmer Commodities Corp.*, 259 F.3d 910, 921 (8th Cir. 2001), to argue they should be afforded discovery despite limited pleadings. But *Abels* pre-dates *Twombly* and *Iqbal*, which established the controlling plausibility standard. Similarly, *Genaw v. Garage Equip. Supply Co.*, 856 F. App'x 23 (6th Cir. 2021), does not excuse conclusory pleadings; rather, it affirms that plaintiffs must first allege facts sufficient to survive Rule 12(b)(6).

10. Because Plaintiffs' Complaint relies on conclusory assertions, speculative inferences, and generalized allegations of group misconduct, it fails to meet the required pleading standard. Plaintiffs cannot avoid dismissal by promising that discovery may later uncover facts not presently alleged. Federal law bars such

speculative theories, and dismissal is warranted under *Twombly*, *Iqbal*, and Sixth Circuit precedent.

## VIII. Conclusion

1. The Plaintiffs' council relies on political disagreement and the emotional impact of my and Blood Tribe's views, protected speech, and lawful assembly to substitute for factual allegations of unlawful conduct.
2. My quote "ALL GROUPS AND ORGS NEED TO HIT SPRINGFIELD, OHIO", "Hell yeah, everyone must hit Springfield", and the usage of the word "hit" was meant to encourage peaceful and lawful demonstration, not threats, violence, harassment or any other unlawful conduct.
3. The alleged bomb threats and harassment are unsubstantiated by evidence linking them to me or any supposed "associate" of Blood Tribe.
4. The timeline of events points to numerous intervening actors and causes, severing any plausible causal chain for the alleged harassment and bomb threats.
5. On top of the conspiracy claims lack of adequate evidence, they also fail as a matter of law under the intra corporate conspiracy doctrine.
6. The Plaintiffs' gross reliance on conclusory assertions, speculative inferences, and generalized allegations of group misconduct means their claims do not meet the pleading standard to engage in discovery.

Accordingly, and for the reasons stated in my Motion to Dismiss, all claims against me should be dismissed.

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of August 2025 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification to the parties of record:

_____