UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| CITY OF SPRINGFIELD, OHIO, *et al.*, : | |
| : | |
| Plaintiffs, : | Case No. 3:25-cv-33 |
| : | |
| v. : | Judge Thomas M. Rose |
| : | |
| THE BLOOD TRIBE, *et al.*, : | Magistrate Judge Caroline H. Gentry |
| : | |
| Defendants. : | |
| : | |

**ENTRY AND ORDER DENYING MOTION TO DISMISS [FOR] FAILURE TO STATE A CLAIM (DOC. NO. 20), AND GRANTING PLAINTIFFS' MOTION FOR LEAVE TO FILE SUR-REPLY TO DEFENDANT POHLHAUS' MOTION TO DISMISS (DOC. NO. 30)**

Now before the Court is Defendant Christopher Pohlhaus' ("Pohlhaus") Motion to Dismiss [for] Failure to State a Claim (the "Motion") (Doc. No. 20). The Complaint (Doc. No. 1) in this matter has been brought by Plaintiffs City of Springfield, Ohio ("Springfield" or the "City"), Rob Rue ("Rue"), Dr. David Estrop ("Dr. Estrop"), Krystal Brown ("Brown"), Tracey Tackett ("Tackett"), Taylor Flora ("Flora"), Casey Rollins ("Rollins"), Jessica Shafer ("Shafer"), and Randall Comer ("Comer") (collectively, "Plaintiffs").[1]  In their Complaint, Plaintiffs chiefly allege that Defendants The Blood Tribe ("Blood Tribe"), Pohlhaus, Drake Berentz ("Berentz"), and seven unnamed co-conspirators (collectively, "Defendants") acted in concert to violate the individual Plaintiffs' civil rights, as proscribed by 42 U.S.C. § 1985(3). (Doc. No. 1 at PageID 39-41.) Plaintiffs also claim eight additional causes of action against Defendants for conduct related to this

---

[1] The Complaint names individual Plaintiffs using their formal titles of public office. For example, Rue is named as "Mayor Rob Rue." (Doc. No. 1 at PageID 1.) However, it does not appear from the face of the Complaint that any of the individual Plaintiffs named therein intend to bring suit in their official capacities. Therefore, for the sake of clarity, the Court refers to such Plaintiffs without their honorifics associated with public office.

1

alleged conspiracy to violate civil rights. (*Id.* at PageID 41-53.) By his Motion, Pohlhaus seeks to dismiss all nine counts on the ground that Plaintiffs have failed to state a claim against him. (Doc. No. 20 at PageID 204.) In total, Pohlhaus challenges the accuracy of Plaintiffs' factual allegations and argues that, in any event, the intracorporate conspiracy doctrine bars Plaintiffs' claims against him. (*See id.* at PageID 205-06.)

For the reasons set forth herein, the Court **DENIES** Pohlhaus' Motion.

I. <u>BACKGROUND</u>

To set the stage, the Court begins by more fully identifying the Parties. Springfield is a municipal corporation in southwest Ohio, where the events giving rise to this case allegedly occurred. (Doc. No. 1 at PageID 4.) The remaining Plaintiffs are individual citizens of Springfield, some of whom hold public office in the City. (*Id.* at PageID 5-7.) In particular, Rue is the mayor of Springfield and Dr. Estrop is the assistant mayor of Springfield, while Brown and Tackett are City Commissioners. (*Id.* at PageID 5.) Flora, Rollins, Shafer, and Comer are Springfield citizens who are involved in public service efforts geared toward the City's immigrant community. (*See id.* at PageID 6-7.) On the other side, Blood Tribe is a purported neo-nazi white supremacist organization operating in Springfield and elsewhere. (*Id.* at PageID 8-9.) Plaintiffs allege that Blood Tribe embraces a mission which includes "the removal of all nonwhite and non racially loyal elements from our society [*sic*]." (*Id.* at PageID 8 (internal quotation marks and alterations omitted).) Pohlhaus allegedly sits atop Blood Tribe's hierarchy as the group's founder and Berentz allegedly sits at Pohlhaus' right hand as a pivotal leader of the organization. (*Id.* at PageID 9.) The remaining unnamed Defendants (i.e., John Does 1-7) are unidentified Blood Tribe associates and alleged co-conspirators to the conspiracy asserted in the Complaint. (*Id.* at PageID 9-10.)

In short, the events of this action were spurred on by the emergence of a Haitian immigrant

community in Springfield. (*Id.* at PageID 2-3, 12.) In Summer 2024, after cultivating something of a following, Defendants allegedly started targeting the Haitian population in Springfield. (*Id.* at PageID 15-16.) In late-July 2024, Blood Tribe allegedly took to social media in response to a local Flag Day event meant to welcome Haitian immigrants. (*Id.*) There, Plaintiffs claim that Blood Tribe referred to these immigrants as "Haitian invaders" who have "caused a significant strain on the good White residents of the [C]ity." (*Id.* at PageID 16.) Blood Tribe allegedly went on to say that the influx of Haitian immigrants in Springfield "will not be tolerated," and told readers to "STOP BEING A PUSSY, GET VETTED, TRIBE UP." (*Id.*) The Complaint avers that Pohlhaus followed Blood Tribe's message up with a call for the organization's followers to "hit Springfield" and "push back" against the "hordes of orcs." (*Id.*) Pohlhaus' message was then supposedly shared by an unnamed John Doe Defendant online. (*Id.* at PageID 17.)

In the afternoon of August 10, 2024, a group of Blood Tribe members allegedly arrived at Springfield city hall wearing face coverings, carrying swastika flags, and wielding assault rifles. (*Id.*) Berentz, the only member not wearing a face covering, allegedly led the Blood Tribe on a march through downtown Springfield, where the group made racist chants and brandished their weapons at Springfield citizens. (*Id.* at PageID 18.) Blood Tribe apparently took credit for the outing in a later social media post and vowed to return to the public sphere. (*Id.* at PageID 19.)

True to their word, Berentz led Blood Tribe members in attending a public meeting of the City Commissioners on August 27, 2024. (*Id.*) Berentz allegedly stood to speak on behalf of Blood Tribe at the meeting, although under a racist pseudonym. (*Id.*) Plaintiffs allege that Berentz gloated about Blood Tribe's march on Springfield earlier in the month and announced that he came to the City Commission with "a word of warning." (*Id.* at PageID 19-20.) His word of warning supposedly threatened City officials with increasing public outrage due to the presence of a Haitian

3

population in Springfield. (*Id.* at PageID 20.) Rue asked Berentz and his Blood Tribe acolytes to leave the meeting, and they were escorted away. (*Id.*)

For the remainder of the year, Plaintiffs allegedly suffered a harassment campaign by Blood Tribe and those who otherwise shared Blood Tribe's sentiments. (*See generally id.* at PageID 20-39.) Plaintiffs claim that Springfield saw bomb threats being made to various local schools, businesses and public buildings for reasons closely mirroring Blood Tribe rhetoric. (*See id.* at PageID 21-25.) Berentz and a cohort of Blood Tribe denizens allegedly congregated outside Rue's home and, when Rue did not come out to meet them, the group supposedly warned him, "enjoy your peace now, until we come back." (*Id.* at PageID 25 (internal quotation marks omitted).) Blood Tribe further allegedly disseminated the personal information of Brown, Tackett, Rollins, and Shafer online, sharing their addresses, phone numbers, and email addresses. (*Id.* at PageID 26, 29-30, 34-35.) Most of the individual Plaintiffs allegedly received some kind of threatening communication and experienced vandalism at their homes. (*Id.* at PageID 26-28, 30, 32-38.) Most of the individual Plaintiffs here also allegedly endured instances of random gentlemen coming to their homes in the middle of the night seeking drugs and sex, after being sent to Plaintiffs' homes by anonymous harassers. (*Id.* at PageID 26, 28, 30-31, 37-38.) In such instances, Blood Tribe allegedly returned to social media to take credit for the arrival of these gentlemen-callers or otherwise attempt to humiliate Plaintiffs. (*Id.* at PageID 25-26, 31-33, 38-39.)

Plaintiffs then filed the instant Complaint on February 6, 2025, alleging the following nine causes of action: (1) conspiracy to violate civil rights under 42 U.S.C. § 1985(3); (2) failure to prevent interference with civil rights under 42 U.S.C. § 1986; (3) common law absolute public nuisance; (4) telecommunications harassment, in violation of Ohio Rev. Code § 2917.21; (5) a

civil action for menacing, in violation of Ohio Rev. Code §§ 2903.21, 2903.22, and 2903.211; (6) civil liability for inciting violence, in violation of Ohio Rev. Code § 2917.01(A)(1); (7) ethnic intimidation, in violation of Ohio Rev. Code § 2307.70(A); (8) civil conspiracy, pursuant to Ohio law; and, (9) intentional infliction of emotional distress. (Doc. No. 1 at PageID 39-53.) Defendants proceeded to dodge service of the Complaint for nearly five months, until being served by publication pursuant to the Court's order. (*See* Doc. Nos. 13 and 14.) When Blood Tribe failed to respond to the Complaint in the time allotted, the Clerk issued the Clerk's Entry of Default (Doc. No. 27) as to the organization.

Pohlhaus, proceeding *pro se*, submitted the current Motion on July 21, 2025. (Doc. No. 20.) Plaintiffs filed their response in opposition to Pohlhaus' Motion on August 11, 2025 (Doc. No. 28), and Pohlhaus replied on August 25, 2025 (Doc. No. 29). Plaintiffs subsequently moved the Court for leave to file a sur-reply based on new arguments raised by Pohlhaus for the first time in his reply brief. (Doc. No. 30.) The Court, finding good cause pursuant to S.D. Ohio Civ. R. 7.2(a)(2) to grant Plaintiffs' request for a sur-reply, has considered Plaintiffs' proposed sur-reply (Doc. No. 30-1) herein. Ultimately, the Court now considers Pohlhaus' Motion ripe for review and decision.

## II.     STANDARD OF REVIEW

"The purpose of a Rule 12(b)(6) motion to dismiss is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Bihn v. Fifth Third Mortg. Co.*, 980 F. Supp. 2d 892, 897 (S.D. Ohio 2013) (citing *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when it includes "factual content that allows the court to draw the reasonable inference that the defendant is liable

5

for the misconduct alleged." *Id.* This standard is not the same as a probability standard, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (internal quotation marks omitted). Thus, if a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

When ruling on a motion to dismiss, the Court must accept the factual allegations of the complaint as true and construe them in a light most favorable to the non-moving party. *Id.* at 554-55. However, the Court is not bound to accept as true a legal conclusion couched as a factual allegation. *Id*. at 555-56. "In evaluating a motion to dismiss [a court] may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to the defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein." *Luis v. Zang*, 833 F.3d 619, 626 (6th Cir. 2016) (internal quotation marks omitted).

### III. <u>ANALYSIS</u>

As a practical matter, Pohlhaus' Motion functionally presents two arguments. Namely, Pohlhaus submits that Plaintiffs' conspiracy claim under 42 U.S.C. § 1985(3) does not plausibly allege any wrongdoing by him and, regardless, the intracorporate conspiracy doctrine bars Plaintiffs' conspiracy claim here.[2] (Doc. No. 20 at PageID 205-06.) Otherwise, Pohlhaus merely

---

[2] In his reply brief, Pohlhaus makes cursory reference to First Amendment principles and the sufficiency of Plaintiffs' state law claims against him. (Doc. No. 29 at PageID 262-64.) However, these arguments were not contained in Pohlhaus' initial Motion. Rather, Pohlhaus' Motion challenges his alleged involvement in the conspiracy at issue and submits that, regardless, Plaintiffs' civil rights conspiracy claim is barred by the intracorporate conspiracy doctrine. (Doc. No. 20 at PageID 205-06.) To the extent that Pohlhaus seeks to raise additional substantive legal arguments in his reply brief, those arguments were not raised in the initial Motion and are therefore waived. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) ("[W]e have found issues to be waived when they are raised for the first time … in replies to responses") (citation omitted).

challenges the truth of the facts alleged in Plaintiffs' Complaint.  (Doc. No. 29 at PageID 257-61.)  The Court considers these two broad prongs of Pohlhaus' Motion in turn.

### 1. 42 U.S.C. § 1985(3) and The Intracorporate Conspiracy Doctrine

The Court looks first to Pohlhaus' attack on Plaintiffs' claim of a conspiracy to violate civil rights under 42 U.S.C. § 1985(3).  On the one hand, Pohlhaus does not argue that the facts alleged by Plaintiffs do not amount to a conspiracy to deprive civil rights.  Instead, Pohlhaus argues that Plaintiffs have not plausibly alleged his involvement in a purported civil rights conspiracy.  (Doc. No. 20 at PageID 205-06.)   More specifically, Pohlhaus asserts that the Complaint lacks any allegation Pohlhaus overtly directed Blood Tribe or its members to carry out any acts in Springfield during the latter part of 2024.  (*Id.*)  Regardless, Pohlhaus contends that he is shielded from liability under Section 1985(3) by virtue of the intracorporate conspiracy doctrine.  (*Id.* at PageID 206.)  Because Blood Tribe and its members are all considered the same legal entity, says Pohlhaus, they cannot have conspired to do anything.  (*Id.*)  In the end, the Court finds Pohlhaus' Motion to be without merit in these respects.

In pertinent part, 42 U.S.C. § 1985 provides:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws … [and] if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).  Accordingly, in order to state a civil rights conspiracy claim under Section 1985(3), plaintiffs must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly

7

or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Cmty. Church of Chesterland Ohio v. Penny*, 759 F. Supp. 3d 805, 809 (N.D. Ohio 2024) (quoting *United Bhd. Of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott*, 463 U.S. 825, 828-29 (1983)).

As with all claims, a civil rights conspiracy "'must be pled with some specificity ….'" *Penny*, 759 F. Supp. 3d at 810 (quoting *Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004)). However, in establishing such a conspiracy, "[p]laintiffs need not prove an express agreement among the conspirators, nor must they show that each conspirator knew 'all of the details of the illegal plan or all of the participants involved.'" *Rieves v. Town of Smyrna, Tennessee*, 67 F.4th 856, 862 (6th Cir. 2023) (quoting *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014)). Rather, "plaintiffs asserting a civil conspiracy can 'rely on circumstantial evidence to establish an agreement among the conspirators.'" *Id.*; *see also Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012). For example, in *Penny* the court found that the plaintiffs had plausibly alleged the defendant's involvement in a civil rights conspiracy where the defendant was the leader of White Lives Matter Ohio—a group not unlike Blood Tribe—and where the defendant issued calls to action for his followers online. *See Penny*, 759 F. Supp. 3d at 810.

In the instant case, the Court finds that Plaintiffs have plausibly alleged Pohlhaus' involvement in a civil rights conspiracy under 42 U.S.C. § 1985(3). As stated above, Pohlhaus allegedly founded Blood Tribe for the express purpose of eradicating racially non-white elements from society. Moreover, Pohlhaus purportedly maintained an individual online presence, which he used to call on his followers to "hit Springfield." In doing so, Pohlhaus allegedly dehumanized

8

non-white Haitian immigrants and those who would defend them. For good measure, after each alleged instance of unlawful conduct by Blood Tribe and its members, Plaintiffs claim that Blood Tribe took credit for the conduct on social media. From these circumstances, it is certainly plausible to infer that Pohlhaus also took credit for Blood Tribe's actions as the group's founder and "blood king." (Doc. No. 1 at PageID 9.) By extension, it is no great logical leap to infer that Pohlhaus would have been involved in the planning and execution of the alleged conspiracy at issue here. Thus, the Court finds that Plaintiffs have sufficiently pled Pohlhaus' involvement in a civil rights conspiracy to survive the present Motion.

Pohlhaus' contention that the intracorporate conspiracy doctrine bars Plaintiffs' Section 1985(3) claim against him is likewise unavailing. The intracorporate conspiracy rule mandates "that a corporation cannot conspire with its own agents because legally a corporation and its agents are but a single person." *In re Jackson Lockdown/MCO Cases*, 568 F. Supp. 869, 879 (E.D. Mich. 1983). Although this doctrine was traditionally and most frequently used in the antitrust context, the Sixth Circuit has held that the intracorporate conspiracy doctrine also applies to Section 1985(3) claims. *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 836, 839 (6th Cir. 1994) (citing *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 510 (6th Cir. 1991)).

Nevertheless, the Sixth Circuit has further opined that "[t]he intracorporate conspiracy doctrine, if applied too broadly, could immunize all private conspiracies from redress …." *Johnson*, 40 F.3d at 840. To this end, courts have declined to extend the benefit of the intracorporate conspiracy doctrine to unincorporated organizations, "as voluntary unincorporated associations … do not have a separate legal existence as do corporations." *In re Jackson*, 568 F. Supp. at 880 (citations omitted). What is more, an organization "formed for the purpose of

9

depriving citizens of their civil rights …" will not be "shielded by the intracorporate conspiracy doctrine." *Johnson*, 40 F.3d at 840.

In the matter at hand, Blood Tribe frankly constitutes both an unincorporated association and an organization formed for the purpose of depriving citizens of their civil rights. As far as the Court has been made aware, Blood Tribe is by its nature an unincorporated voluntary membership-based association. More troublesome, assuming Plaintiffs' characterization of Blood Tribe to be true, Blood Tribe exists to impose private infringements on the rights of citizens. It is beyond credulity to suggest that an organization with the stated mission of "the removal of all nonwhite and non racially loyal elements from our society [*sic*]" is not an organization dedicated to the private impairment of civil rights. (*Id.* at PageID 8 (internal quotation marks and alterations omitted).) Plaintiffs' allegations simply speak for themselves in this regard. Accordingly, the Court finds that Pohlhaus is not entitled to the benefit of the intracorporate conspiracy doctrine.

### 2. Plaintiffs' Remaining Claims

What remains of Pohlhaus' Motion consists of a challenge to the accuracy of the facts alleged in Plaintiffs' Complaint. However, at the pleading stage, courts do not consider whether the facts alleged in a plaintiff's complaint are accurate. *Penny*, 759 F. Supp. 3d at 810-11. Instead, at the pleading stage, courts "must focus on sufficiency and plausibility." *Id.* (citing *Iqbal*, 556 U.S. at 678). As discussed above, Plaintiffs have plausibly alleged Pohlhaus involvement in a civil rights conspiracy by way of circumstance, if not as a result of Pohlhaus' direct calls to action. Further, Pohlhaus' effort to cast doubt on Plaintiffs' allegations with respect to the remaining causes of action pled here does nothing to detract from the plausibility of those causes of action in the first place. Therefore, Pohlhaus' challenge to the accuracy of the facts alleged in Plaintiffs' Complaint is for naught.

10

### IV. CONCLUSION

For the reasons explained herein, the Court hereby **DENIES** Pohlhaus' Motion to Dismiss [for] Failure to State a Claim (Doc. No. 20).

**DONE** and **ORDERED** in Dayton, Ohio, this Thursday, September 18, 2025.

s/Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE