## IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO WESTERN DIVISION (DAYTON)

THE CITY OF SPRINGFIELD, OHIO

MAYOR ROB RUE,

ASSISTANT MAYOR

DR. DAVID ESTROP,

CITY COMMISSIONERS

KRYSTAL BROWN

and TRACEY TACKETT,

 and TAYLOR FLORA,

  CASEY ROLLINS,

JESSICA SHAFER,

and RANDALL COMER,

     Plaintiffs,                        Civil action 3:25-cv-33

V.                                  JURY TRIAL DEMANDED

BLOOD TRIBE,

CHRISTOPHER POHLHAUS,

DRAKE BERENTZ,

 and JOHN DOES 1–7,

 Defendants.

_____/

### DEFENDANTS INITIAL BRIEF

### ANSWER TO THE PLAINTIFFS COMPLAINT

NOW COMES Drake Berentz filing his initial brief in the above captioned case.

1

In support of his brief the defendant avers the following.

Answers to the following allegations alleged by the Plaintiffs.

      1.    Drake Berentz, who also uses the thinly veiled racist names "Nate Higgers" and "Herzog Higgers," is a leader of the Blood Tribe and coordinated the Blood Tribe's activity in Springfield. Berentz led the August 10, 2024, armed foray into Springfield during its Jazz and Blues festival, threatened the Mayor and Commissioners at the August 27, 2024, City Commission meeting, and led the September 28, 2024, confrontation of Mayor Rue and his family at their home. He has threatened Springfield, its officials, and its residents with violence and has participated in the public dissemination of Shafer's personal information.

**Response:**

Defendant denies any wrongdoing as all of the allegations are without merit and the actions described are grossly misstated and Protected under the first amendment of the US Constitution.

      2.    The Blood Tribe "hit" Springfield again on August 27, 2024, during a City Commission meeting. Arriving in a black BMW with three uniformed Blood Tribe members, Berentz entered the meeting and approached the podium to speak. He started by identifying himself using a thinly veiled racial epithet as a pseudonym: "Nathaniel Higgers of Blood Tribe."

**Response.**

Defendant denies any wrongdoing as all of the allegations are without merit and

the actions described are grossly misstated and Protected under the first amendment of the US Constitution.

3. Berentz bragged that he led the anti-Haitian disruption on August 10, 2024, during the City's Jazz and Blues Festival.

**Response.**

Defendant denies any wrongdoing as all of the allegations are without merit and the actions described are grossly misstated and Protected under the first amendment of the US Constitution.

4. Defendant Drake Berentz had knowledge of the conspiracy in violation of 42 U.S.C. § 1985(3) and had the power to prevent or aid in preventing the wrongs conspired to be committed under Count I. As a high-ranking member of the Blood Tribe and its leader on the ground in Springfield during the time of the conspiracy alleged herein, Berentz had the power to stop any wrongful action by Blood Tribe members but neglected to take such actions to prevent the conspiracy alleged herein or to make other reasonably diligent efforts to prevent the conspiracy from occurring.

**Response.**

Defendant denies any wrongdoing as all of the allegations are without merit and the actions described    are grossly misstated and Protected under the first amendment of the US Constitution.

3

5.     Some attendees, including Flora, recognized Berentz and understood that Berentz and the Blood Tribe represented a virulent form of hate and presented a direct threat to the city and its residents. As she walked out of the meeting, Flora warned the Commissioners that Berentz was "a Nazi" and urged them not to listen to him.

**Response.**

Defendant denies any wrongdoing as all of the allegations are without merit and the actions described are grossly misstated and Protected under the first amendment of the US Constitution.

6.     Berentz continued to threaten and berate the Commissioners. He stated that he had "come to bring a word of warning," that the Commissioners must "stop what you're doing before it's too late," and threatening that "crime and savagery will only increase with every Haitian you bring in, and with it, public frustration and anger." [26]

**Response.**

Defendant denies any wrongdoing as all of the allegations are without merit and the actions described are grossly misstated and Protected under the first amendment of the US Constitution.

7.     As Berentz continued his rant, the Commissioners realized that Berentz and his Blood Tribe gang represented an imminent threat to their safety, and the safety of the city. Katie Eviston, Springfield's Director of Finance,

4

fearing an altercation, removed her high heeled shoes so that she could be ready to run.

Response.

Defendant denies any wrongdoing as all of the allegations are without merit and the actions described are grossly misstated and Protected under the first amendment of the US Constitution.

8.    Rue asked Berentz to leave because his statements were threatening. Berentz ignored him, continuing to speak until he was escorted from the podium.

**Response**.

## As to COUNT I

Conspiracy to Violate Civil Rights under the Ku Klux Klan Act of 1871, 42 U.S.C. § 1985(3), by the Individual Plaintiffs against All Defendants


**Conspiracy to Violate Civil Rights under the Ku Klux Klan Act of 1871, 42 U.S.C. § 1985(3).**

The Ku Klux Klan Act of 1871, codified in 42 U.S.C. § 1985(3), is a federal law designed to combat c ivil rights violations. It allows individuals to sue for damages if they believe they have been wronged by conspirators who have acted in furtherance of a conspiracy to deprive them of equal protection of t he laws or equal privileges and immunities under the laws. The act provides a federal cause of action f or any person injured by an act when the act is committed in furtherance of a conspiracy designed to d eprive the victim of the equal protection of the laws or equal privileges and immunities under the laws of the United States.


**(1)PREVENTING OFFICER FROM PERFORMING DUTIES**

If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties;

**(2)OBSTRUCTING JUSTICE; INTIMIDATING PARTY, WITNESS, OR JUROR**

If two or more persons in any State or Territory conspire to deter, by force, intimidation, or

To successfully allege a conspiracy under this act, the plaintiff must demonstrate that the conspirators had an agreement to violate their rights by acting together. This includes showing that the conspirators had a "meeting of the minds" to commit the violation. The act has been the subject of voluminous interpretation by courts and remains a significant piece of civil rights law.

**(2)OBSTRUCTING JUSTICE; INTIMIDATING PARTY, WITNESS, OR JUROR**

If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory,

with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

**(3)DEPRIVING PERSONS OF RIGHTS OR PRIVILEGES**

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted

**Civil conspiracy involves an agreement between two or more parties to commit an unlawful act that results in harm to a third party. In the instant case there was no harm to any Plaintiff.**

**Key Elements of Civil Conspiracy**

To establish a claim for civil conspiracy, a plaintiff must prove the following elements:

1. **Agreement**: There must be an agreement between two or more parties to engage in a wrongful act. This agreement can be either express (clearly stated) or implied (inferred from actions or cir cumstances).

2. **Overt Act**: At least one of the conspirators must have taken an overt act in furtherance of the co nspiracy. This act does not necessarily have to be illegal itself, but it must be a step toward achi eving the unlawful goal.

3. **Intent**: The parties involved must have the intent to commit the unlawful act or to achieve a goa l that is unlawful. This intent can be demonstrated through the actions and communications of t he conspirators.

4. **Damages**: The plaintiff must show that they suffered actual damages as a result of the conspiracy. This harm must be a foreseeable consequence of the conspirators' actions.

The Underlying Unlawful Act

A civil conspiracy claim must be attached to an underlying unlawful act. In this context, "unlawful" refers to a civil wrong, known as a tort, which is an act that causes harm and leads to civil legal liability. If the underlying tort claim fails, the civil conspiracy claim will also be dismissed.

Common torts that form the basis for these claims include fraud, breach of fiduciary duty, and tortious interference with a contract. For example, if individuals agree to spread false information to ruin a business's reputation, the underlying tort is defamation. If a group conspires to induce someone to break a contract, the underlying tort is tortious interference.

Civil conspiracy is not a standalone legal claim. This means a plaintiff cannot only sue for civil conspiracy. Instead, civil conspiracy must accompany another tort.

- Because a civil conspiracy claim must be premised on another underlying civil claim, the plaintiff must additionally prove that an underlying tort was committed. *If there is no valid, underlying claim, then the civil conspiracy claim fails.*[5] ("even the most eager efforts at conspiracy produce no civil liability unless a tort was committed in an effort to carry it out").

- Therefore, a plaintiff must allege in the complaint and ultimately prove the elements of an underlying tort were committed by the defendant. This underlying tort must usually be an intentional tort or breach of some other state civil statute.

The tort claim here is a state statute.

In Ohio, a criminal statute can be used in a civil complaint under certain conditions. The Ohio Revised Code (R.C.) 2307.60 allows individuals injured by a criminal act to file a civil action for damages unless specifically prohibited by law. This statute provides a broad framework for civil lawsuits based on various criminal acts, including those that do not have a specific civil remedy. However, it is essential to note that the statute does not independently authorize a civil action for violations of all criminal statutes based on the pleading of a criminal statute in a civil complaint.

This claim is only viable if there was a criminal act committed which there was not and the defendant was never charged with a crime.

- The Plaintiff Suffered Harm
- The essence of a civil conspiracy claim is the damage inflicted on a plaintiff because of unlawful acts taken in furtherance of the conspiracy. Therefore, it is crucial to prove how the tortious act committed in furtherance of the conspiracy caused an injury to the plaintiff.

In the instant case there was no injury and no conspiracy was proven.

In 1791, America adopted the Bill of Rights. These were the first ten amendments to the U.S. Constitution. They championed personal freedoms and curtailed governmental authority. The First Amendment embodies these democratic principles, stating:

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

From this language, we can see these freedoms begin as a limitation on Congress. In other words, Congress may not pass laws that restrict our rights to:

- Freedom of Religion

- Freedom of Speech
- Freedom of the Press
- Freedom of Assembly
- Freedom to Petition the Government

- Protected Activities Under the First Amendment
- The Supreme Court has also determined that free speech rights protected by the First Amendment include the written word and other forms of expressive conduct. For example, messaging on a t-shirt or wearing an armband protesting a war are both forms of speech or expression protected by the First Amendment.
- **The Court has also determined that free expression includes <u>freedom of association</u>.** Although this freedom is not mentioned in the First Amendment, the Court has deemed it "an indispensable means of preserving" other First Amendment rights. Therefore, the Court recognizes a First Amendment right to free association for the purpose of engaging in assembly, speech, and other First Amendment activities.

In the instant case the defendant exercised his 1st amend right to freedom of association.

Four **US SUPREME COURT CASES** establish what the defendants' rights were.

- **Brandenburg v. Ohio (1969)**: Developed the "incitement test," establishing that speech can only be prohibited if it is directed at and likely to produce imminent lawless action.

- **Hess v. Indiana (1973)**: Reinforced the protection for provocative speech if it does not reach the threshold of incitement to imminent violence or illegal activity.

- **Healy v. James (1972)**: Affirmed student rights to assembly within educational institutions, emphasizing that concerns over potential disruptions are insufficient to suppress peaceful assembly.

- **Snyder v. Phelps (2011)**: Tackled the balance between free speech and emotional distress, holding that public speech on matters of public concern, even if deeply offensive, is entitled to "special protection" under the First Amendment.

In Brandenburg v. Ohio." *Oyez,* www.oyez.org/cases/1968/492. Accessed 22 Nov. 2025.

## Facts of the case

Brandenburg, a leader in the Ku Klux Klan, made a speech at a Klan rally and was later convicted under an Ohio criminal syndicalism law. The law made illegal advocating "crime, sabotage, violence, or unlawful methods of terrorism as a means of accomplishing industrial or political reform," as well as assembling "with any society, group, or assemblage of persons formed to teach or advocate the doctrines of criminal syndicalism."

## Question

Did Ohio's criminal syndicalism law, prohibiting public speech that advocates various illegal activities, violate Brandenburg's right to free speech as protected by the First and Fourteenth Amendments?

## Conclusion

The Court's Per Curiam opinion held that Ohio law violated Brandenburg's right to free speech. The Court used a two-pronged test to evaluate speech acts: (1) speech can be prohibited if it is "directed at inciting or producing imminent lawless action" and (2) it is "likely to incite or produce such action." The criminal syndicalism act made illegal the advocacy and teaching of doctrines while ignoring whether or not advocacy and teaching would actually lawlessly incite imminent action. The failure to make distinction rendered the law overly broad and in violation of the Constitution.

In the instant case the speech of the defendant was not directed at inciting or producing imminent lawless action and the Plaintiff has not proven that it did. This standard cannot be met by conjecture, opinion, feeling or unfounded allegations.

The Plaintiff state no material facts to support their allegations and therefore the defendants' actions are protected under the 1st amendment.

**In Healy v. James, 408 U.S. 169 (1972)**

Petitioners, seeking to form a local chapter of Students for a Democratic Society (SDS) at a state-supported college, were denied recognition as a campus organization. Recognition would have entitled petitioners to use campus facilities for meetings and to use of the campus bulletin board and school newspaper. The college president denied recognition because he was not satisfied that petitioners' group was independent of the National SDS, which he concluded has a philosophy of disruption and violence in conflict with the college's declaration of student rights. Petitioners thereupon brought this action for declaratory and injunctive relief. The District Court first ordered a further administrative hearing, after which the president reaffirmed his prior decision. Approving the president's judgment, the District Court held that petitioners had failed to show that they could function free from the National SDS and that the college's refusal to approve the group, which the court found "likely to cause violent acts of disruption," did not violate petitioners' associational rights. The Court of Appeals, purporting not to reach the First Amendment issues, affirmed on the ground that petitioners had failed to avail themselves of the due process accorded to them and to meet their burden of complying with recognition to petitioners' group was based on an assumed relationship with the National SDS, or was a result of disagreement with the group's philosophy, or was a consequence of a fear of disruption, for which there was no support in the record, the college's decision violated the petitioners' First Amendment rights. A proper basis for nonrecognition might have

**In the 1972 case of Healy v. James, the United States Supreme Court held that Central Connecticut State College's refusal to recognize a campus chapter of Students for a Democratic Society was unconstitutional, as it violated the First Amendment rights of free speech and association.**

This case is applicable as the Blood Tribe as they had a right to form their group and present their views in the lawful manner they did and thus protected under the first amendment of the constitution.

**In Hess v. Indiana**

**Citation.** 414 U.S. 105 (1973)

**Brief Fact Summary.**

Defendant was convicted of disorderly conduct when he shouted, "We'll take the fucking street later," or "We'll take the fucking street again," to a group of protestors. The court of appeals and the Indiana Supreme Court affirmed. Defendant petitioned the Supreme Court of the United States to review.

**Synopsis of Rule of Law.**
**Speech that advocates illegal activity or the use of force is protected under the First Amendment to the United States Constitution unless it is both intended and likely to provoke imminent illegal activity.**

**In the instant case neither intended or likely actions where present for anyone to state that they were in imminent danger of illegal activity.**

**Facts.**

Gregory Hess (Defendant) was arrested for disorderly conduct during an antiwar demonstration on a university campus. During the demonstration, a group of protesters gathered in the street to block passage of a police car transporting arrested protesters. A group of officers proceeded down the street and the protestors moved to the sidewalks. Defendant was arrested after one of the officers allegedly heard him shout an obscenity. Witnesses testified that Defendant had shouted "We'll take the fucking street later," or "We'll take the fucking street again." The witnesses testified that Defendant appeared to be making a general exclamation to nobody in particular, even though he was facing the crowd of protestors at the time. The witnesses also testified that Defendant's exclamation was no louder than the shouts of others in the crowd at the time. Defendant was convicted of disorderly conduct and appealed his conviction to the Indiana Supreme Court. The Indiana Supreme Court upheld Defendant's conviction on a finding that his exclamation was intended to encourage the crowd to engage in illegal activity and was likely to have that effect. Defendant petitioned the Supreme Court of the United States to review.

**Issue.**

Whether speech that advocates illegal activity or the use of force is protected under the First Amendment to the United States Constitution when it is not both intended and likely to provoke imminent illegal activity.

**Us Supreme Court Held.**

The Indiana Supreme Court's ruling is reversed. **Speech that advocates illegal activity or the use of force is protected under the First Amendment to the United States Constitution unless it is both intended and likely to provoke imminent illegal activity.**

**In the instant case there is no evidence that the actions of the defendants' actions and words provoked any imminent illegal activity, and none was committed.**

The US Supreme court decision in Brandenburg v. Ohio, 395 U.S. 444 (1969) clearly establishes that the constitution forbids state punishment of speech that advocates unlawful activity unless, under the circumstances, the speech at issue will have the probable effect of provoking others into immediately or inevitably embarking on a course of illegal conduct.  There is no evidence that Defendant contemplated or           desired to provoke any immediate action as a result of his exclamation. As such, the statement is constitutionally protected speech and cannot be penalized by the state.

**In Snyder v. Phelps (2011)**: In an 8–1 decision the Supreme Court ruled in favor of Phelps, upholding the Fourth Circuit's decision. Chief Justice John Roberts (as in the *Stevens* case) wrote the majority opinion stating "What Westboro said, in the whole context of how and where it chose to say it, is entitled to 'special protection' under the First Amendment and that protection cannot be overcome by a jury finding .

**In summary these US SUPREME COURT CASES  describe all the conduct that the defendants allegedly committed and provide protection for all under the 1st amendment of the US CONSTITUTION**

Count I  Fails to Prevent Interference with Civil Rights under the Ku Klux Klan Act of 1871, 42

U.S.C. § 1986, by the Individual Plaintiffs against All Defendants. This count fails because there was

no interference committed by the defendants who were simply exercising their 1st amendment rights

COUNT III Fails

Common Law "Absolute" Public Nuisance by Plaintiff City of Springfield against the Blood Tribe,

Christopher Pohlhaus, and Drake Berentz. The Plaintiff's state no Ohio Stature which was violated


COUNT IV fails.

Civil Action for Telecommunications Harassment, Ohio Rev. Code § 2917.21, by All Plaintiffs against

All Defendants

Defendants Polhamus, Berentz, and John Does 1–7 violated Ohio Revised Code § 2917.21

by repeatedly sending telecommunications, including phone calls, emails, and other

messages with the purpose of harassing, intimidating, or abusing Plaintiffs . Defendant

never called or left messages.   This is a criminal code being used in a civil case. The

defendant was never charged with any criminal activity, so the count fails.

COUNT V Fails

**Civil Action for Menacing, Ohio Rev. Code §§ 2903.21, 2903.22, and 2903.211, by the Individual Plaintiffs against All Defendants**

This is a criminal code being used in a civil case. The defendant was never charged with

any criminal activity, so the count fails.

COUNT VI

Civil Liability for Inciting to Violence, Ohio Rev. Code § 2917.01(A)(1), by All Plaintiffs against All Defendants

1. 183 Defendants Polhamus, Berentz, and John Does 1–7 violated Ohio Revised Code § 2917.01(A)(1) by urging and inciting Blood Tribe members, their followers, and members of the **public to "hit"** Springfield and to **commit violence against Plaintiffs** and other residents of Springfield. And, in the weeks and months that followed, Defendants continued to violate Ohio Revised Code § 2917.01(A)(1) by repeatedly targeting Plaintiffs with harassing and hate-based conduct and messages that threatened violence against them. No violence occurred and the defendant never incited any.

This is a criminal code being used in a civil case. The defendant was never charged with any criminal activity, so the count fails.

COUNT VII fails.

2. Civil Liability for Ethnic Intimidation, Ohio Rev. Code § 2307.70(A), by All Plaintiffs against All Defendants

The actions of Defendants Blood Tribe, Polhamus, Berentz, and John Does 1–7, in violation of Ohio Revised Code §§ 2903.21 (aggravated menacing), 2903.22 (menacing), and 2917.21 (telecommunications harassment), were motivated by reason of race, color, religion, or national origin of another person or group of persons, as described herein. No material facts support this allegation.

COUNT VIII fails.

Civil Conspiracy

Knowingly causing persons to fear serious physical harm to their person or property or members of their immediate family in violation of Ohio Revised Code §§ 2903.21(A), 2903.22(A)(1), and 2903.211(A)(1);

Knowingly making or causing to be made harassing telecommunications in violation of Ohio Revised Code §§ 2917.21(A) and (B).

Knowingly engaging in conduct designed to urge or incite another to commit an offense of violence in violation of Ohio Revised Code § 2917.01.

Causing the evacuation of a public place or otherwise causing serious public inconvenience or alarm in violation of Ohio Revised Code § 2917.31(A).

(A)(1) Anyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law, may recover the costs of maintaining the civil action and attorney's fees if authorized by any provision of the Rules of Civil Procedure or another section of the Revised Code or under the common law of this state,

and may recover punitive or exemplary damages if authorized by section 2315.21 or another section of the Revised Code. This statute is not applicable in the instant case as there was no criminal act committed. 2315.21 does not authorize the award of these damages as the code is not applicable to the instant case.

Count IX fails.

This statute Code § 2917.321(B). is a criminal code but the defendants where never charged with any    criminal act, so it fails in a civil case.

## SUMMARY

- The defendant denies all allegations  as they are protected under his constitutional 1st Amendment Rights.  Further the state allegations start with the premise of a tort  action pursuant to The Ohio Revised Code (R.C.) 2307.60 which requires proof of a criminal action. Since no criminal acts occurred the entire state statue allegations  fall on their face. Section 2315.21 fails for the same reason.  All of the allegations under Chapter 29  criminal code are not applicable because all the actions of the defendant are protected under the First amendment of the US Constitution. The defendant was exercising his right to Freedom of Speech, Freedom of Assembly, Freedom to Petition the Government and freedom of association. The case on the whole is a frivolous suit  as it fails to establish any material facts to prove any of the allegations against the defendant not protected by the Constitution.

**WHEREFORE THE ABOVE CONSIDERED** defendant  Drake Berentz ask this honorable court to dismiss all allegations concerning his involvement in the instant case pursuant to the First Amendment of the United States Constitution.

19

Respectfully,

Drake Berentz, Pro Se

## CERTIFICATE OF SERVICE

I hereby certify that I sent a copy of the foregoing Initial Brief to the following by electronic means to their email of record. On this the 25th day of November 2025.

James Pasch (0086809)
ANTI-DEFAMATION LEAGUE
605 Third Avenue
New York, NY 10158-3650
Email: jpasch@adl.org

Glen R. McMurry (0082600)
TAFT STETTINIUS & HOLLISTER LLP
40 North Main Street, Suite 1700
Dayton, OH 45423-1029
Email: gmcmurry@taftlaw.com
Daniel J. Kramer

Gregory F. Laufer

Marques S. Tracy

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas New York, NY 10019-6064
Email: dkramer@paulweiss.com
glaufer@paulweiss.com mtracy@paulweiss.com

Karen L. Dunn

2001 K Street, N.W. Washington, DC 20006-1047
Email: kdunn@paulweiss.com

*Counsel for Plaintiffs*

Drake Berentz, Pro Se

DRAKE BERENTZ
(814) 417-1557
58300 LASHLEY RD
SENECAVILLE  OH 43780

**0.3 LBS LTR**
SHP WT: LTR
DATE: 25 NOV 2025

SHIP US DISCTRICT COURT CLERK
TO: STE 712
    200 W 2ND ST

DAYTON OH 45402-1472



OH 454 9-01

UPS NEXT DAY AIR                          **1**

TRACKING #: 1Z GG8 840 24 6893 0323



REF #1: CZ

BILLING: P/P
SIGNATURE REQUIRED

MM9SCMNDFR14R ISH 13.00C ZZD23Q EP 42.5V 10/2025

SEE NOTICE ON REVERSE regarding UPS terms, and notice of limitation of liability. Where allowed by law, shipper authorizes UPS to act as forwarding agent for export control and customs purposes. If exported from the US, shipper certifies that the commodities, technology or software were exported from the US in accordance with the Export Administration Regulations. Diversion contrary to law is prohibited.    EOD 0625



US DISTRICT COURT CLERK
**200 W 2ND ST**
STE 712
DAYTON OH 45402

P: 05        S: **BLACK**      I: **GLD**
**AX1—3923**                    ☐
1ZGG8840246893  0323        1030
Y0892LR    DATACOR001 NOV 26 07:26:58 2025
US  4541   HIP 25.9.1   ZD021R



# Express Envelope

theupsstore.com
theupsstorefranchise.com

**THE UPS STOR**